**STATE OF TENNESSEE DEPARTMENT OF HUMAN SERVICES, In the Matter of "A" and "B", Appellant,**

v.

**Gus Konstantine GOUVITSA and Joy Arnold, Appellees.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

April 3, 1987.

Application for Permission to Appeal Denied by Supreme Court Aug. 3, 1987.

W.J. Michael Cody, Atty. Gen. and Reporter, Dianne Stamey, Asst. Atty. Gen., State of Tenn., Nashville, Ray Neal, Dept. of Human Services, Chattanooga, for appellant.

W. Neil Thomas and Everett L. Hixson, Jr., Chattonooga, for appellee Gus Konstantine Gouvitsa.

Phillip C. Lawrence, Chattanooga, for appellee Joy Arnold.

Mary Ann Green, of Green & Gothard, Chattanooga, Guardian, Ad Litem.

TOMLIN, Presiding Judge, Western Section.

This is one of two cases consolidated for consideration and disposition on appeal. Its companion case is styled *Joy Gouvitsa Arnold v. Gus Konstantine Gouvitsa*, 735 S.W.2d 458 (Tenn.App.1987) and originated in the Circuit Court of Hamilton County as a custody dispute. This case comes from the juvenile court of the same county and was initiated with the filing of a petition by the Department of Human Services (hereafter "TDHS") to have the children of Arnold and Gouvitsa declared dependent and neglected.

Immediately following the filing by TDHS of the petition in the juvenile court seeking to have the parties' two minor children declared to be dependent and neglected due to sexual abuse at the hands of their father, that court granted temporary custody to TDHS, placing the children in the Chambliss Children's Home. Following a full evidentiary hearing, the juvenile court found the children to be dependent and neglected.[1] Legal custody was granted to TDHS. Father perfected his appeal to circuit court. He later filed a motion to dismiss TDHS' petition on the grounds that the petition failed to set forth the material facts with requisite specificity, and that the earlier circuit court order granting custody to Father was *res judicata*. The circuit court granted the motion to dismiss. For the reasons hereinafter set forth, we reverse the trial court and remand the case to the circuit court for a trial *de novo* in accordance with T.C.A. § 37–1–159.

We find it necessary to include certain procedural facts from the companion case in order to develop a clear understanding of this litigation. Mother and Father were divorced in September, 1983. Their agreement dealing with custody and property rights was approved by the trial court and incorporated into the final decree which awarded Mother a divorce on the ground of irreconcilable differences. Mother and Father were given joint custody of their two children. Mother had become a member of a religious group called "Jehovah's Witnesses" some months prior to the divorce. It was the desire and intent of the court that the children should be exposed to different cultural and religious experiences.

Subsequently, on two separate occasions the trial court found Husband to be in contempt of court for violating certain provisions of the property settlement agreement. In July, 1984 Father was again found in contempt of court for failure to comply with previous orders of the court, and he was sentenced to the workhouse in Hamilton County for six months. At that time full and permanent custody of the children was awarded to Mother. Following a hearing on Father's petition for contempt and to modify, the trial court ruled that custody of the children should remain with Mother. That same order provided that the minor child "A" should be seen by a psychiatrist for an evaluation and a report filed with the court.

Shortly thereafter, Mother, Stepfather and the children moved to California. On May 21, 1985 an order to show cause was issued by the court calling upon Mother to show cause why she should not be held in contempt of court for violating orders of the court. Although there is no proof either pro or con in the record, the trial court's order of June 10, 1985 reflected that notice of the hearing, held on June 3, 1985, had been mailed to a school in California where "A" had applied for admission, and that the school had transmitted the notice to Mother. The order of the trial court reflected that Mother "refused to abide the prior orders of this Court regarding the parties' minor children and having fled this jurisdiction without notice to the Court or Defendant-Petitioner[2] . . . ."

---

1. Notwithstanding the fact that these children have been named in the pleadings and briefs thus far, this Court has elected to refer to them as either "the children" or "A" and "B."

2. In argument, counsel for Father conceded that

The June 10, 1985 order, in addition to finding Mother in contempt, changed custody of both children from Mother to Father, with Mother's visitation rights to be subsequently determined. Armed with this order, Father went to California and through court proceedings there obtained physical custody of the children. He returned them to Tennessee. In August, 1985 Mother filed a motion for specific visitation, a motion to set aside the court's order of June 10, 1985 pursuant to Rule 60.02, T.R.C.P. and a petition to modify custody so as to place custody in her. The case was initially set for October 4, 1985 but was continued upon motion of Father, being reset for January, 1986.

"A" and "B" first reported being sexually abused by Father in November, 1984 following a weekend visitation. Mother immediately reported the incident to TDHS, who caused the children to be examined by a physician as well as a psychological counselor. As a result, the circuit court required that the children's visit with Father during the Christmas holidays be supervised. Following the Christmas visit with Father, both "A" and "B" reported to Mother that they had again been sexually abused by Father. In March, 1985 "A" reported further sexual abuse at the hands of Father. Mother again caused "A" to be examined by a medical doctor. It was following this incident that Mother decided to move to California in order to protect the children.

In September, 1985 following the restoration of Father's custody, "B" reported additional acts of sexual molestation by Father. Mother reported this to TDHS. On November 11, 1985, TDHS filed its petition in this case. On the same day, the juvenile court entered an interlocutory order holding that the children were subject to an immediate threat to their health and safety and at the same time granted temporary custody to TDHS. They were placed at Chambliss Children's Home. A guardian *ad litem* was appointed for the children shortly thereafter.[3]

While this proceeding was pending, with the children then under the custody of TDHS, a hearing was held in January and February, 1986 in circuit court on Mother's petition to modify custody and to set aside the trial court's order of June 10, 1985. On March 7, 1986 the trial court ordered that the custody of the children should remain with Father subject to visitation rights of Mother. Mother later duly perfected her appeal in that case. We will consider that appeal in a separate opinion.

In May and August, 1986 the juvenile court heard testimony on TDHS' petition. On August 19, 1986 that court found "A" and "B" to be dependent and neglected children and placed them in the custody of TDHS. Physical custody was granted to Mother, with Father having limited, supervised visitation. Father then perfected his appeal to the circuit court. Following the docketing of the case there, Father filed a motion to dismiss on two grounds: (1) that the petition failed to allege the particular facts with requisite specificity pursuant to Rule 9, Tennessee Rules of Juvenile Procedure; and (2) that the prior custody order of March 7, 1986 of the circuit court constituted *res judicata*. Following a hearing in the circuit court before Judge Samuel H. Payne, the same judge who heard and decided the custody case, the court dismissed the petition on the ground that the March 7, 1986 order was *res judicata*. TDHS perfected its appeal to this Court, at the same time obtaining a stay of the circuit court's order, which stay is still in effect.

## I. THE ISSUE OF JURISDICTION.

TDHS contends that insofar as custody is concerned, exclusive jurisdiction was

---

there was not in existence any court order restraining Mother and the children from leaving Tennessee or to require the court's consent prior to leaving the jurisdiction. Counsel likewise conceded that the sole remaining basis for finding Mother in contempt of court was that she placed herself in position, by moving, of being unable to carry out the court's order and

present "A" to a Chattanooga psychiatrist for evaluation.

3. Because we are deciding this case on legal grounds and not factual ones, we have purposely omitted graphic descriptions of the specific acts alleged.

vested in the Juvenile Court of Hamilton County upon the filing of the petition alleging the children to be dependent and neglected. It is a logical extension of that contention that inasmuch as TDHS' petition was filed and an order of custody entered prior to the ruling of the circuit court in March, 1986 awarding custody to father,[4] that court lacked jurisdiction to make an award of custody. On the other hand, while admitting that the circuit court did not have concurrent jurisdiction over a dependency and neglect case, Father nonetheless states that the circuit court may exercise simultaneous jurisdiction over such cases. He also asserts that the jurisdiction of the juvenile court is somewhat less meaningful than that of the circuit court, inasmuch as its custody orders were considered to be merely temporary while those of the circuit court were considered to be permanent. Father is in error. He is dealing in semantics in trying to distinguish between concurrent jurisdiction and simultaneous jurisdiction. There is little, if any difference between the meanings of these two words.

■ As to the question of "temporary" or "permanent" custody orders, the orders of neither court are permanent in the real sense of the word. Custody orders of the circuit court can be readily changed or modified upon the showing of changed circumstances adversely affecting the welfare of children. On the other hand, custody orders of the juvenile court can be changed upon a finding that the child is no longer dependent or neglected. However, this skirmish does not dispose of the real issue—whether or not in this case the juvenile court has exclusive original jurisdiction. We hold that under the statute and the case law of this state it does. T.C.A. § 37-1-103 reads in part as follows:

*Exclusive original jurisdiction.* (a) The juvenile court has exclusive original jurisdiction of the following proceedings, which are governed by this part:

(1) Proceedings in which a child is alleged to be delinquent, unruly, or dependent and neglected, or to have committed a juvenile traffic offense as defined in § 37-1-146;

That this jurisdiction was intended to be exclusive is reinforced by the omission of dependency and neglect proceedings from T.C.A. § 37-1-104, which lists the various proceedings in which the juvenile court shares concurrent jurisdiction with other courts.

In addition, both text authorities and Tennessee case law recognize the exclusive jurisdiction of the juvenile courts in dependency and neglect proceedings.

The jurisdiction of a court to entertain proceedings involving delinquent or dependent children is usually held to be exclusive, and the court cannot be deprived thereof by proceedings in another court in a divorce case. So, where a court having jurisdiction of proceedings affecting the custody of a child, such as a divorce court, has awarded the child to one parent, there is nothing to prevent the juvenile court from finding that the child is neglected or is dependent, and therefore should be taken away from the parent. On the other hand, the juvenile court will not adjust parental disputes concerning the care and education of a minor, such matters being for a court of equity where the parents are actual parties. A trial for delinquency based on the ground that the infant had violated the criminal law is not a criminal trial within the meaning of constitutional and statutory provisions conferring on particular courts exclusive jurisdiction over the trial of criminal cases, and hence the juvenile court is not ousted of jurisdiction in the premises.

The jurisdiction of the court entertaining delinquency or dependency proceedings is continuing, to the exclusion of any other court of concurrent jurisdiction, and except as jurisdiction may be relinquished in accordance with statute, once a juvenile court has entertained jur-

**4.** Custody had been previously changed from Mother to Father. This order followed Mother's petition to change custody.

isdiction over a child that court must take affirmative action to dispose of the case in one of the ways provided by statute before jurisdiction can terminate. Ordinarily, the jurisdiction of the court continues until the child reaches majority, or the age specified by statute....

43 C.J.S. *Infants* § 53 (1978).

This issue was decided in Tennessee in *Marmino v. Marmino*, 34 Tenn.App. 352, 238 S.W.2d 105 (1950) and subsequently has been followed by all appellate courts of this state. In *Marmino*, a divorce proceeding in which custody was an issue, the chancellor declined to make a ruling of custody, noting in his decree that the parties' children were at that time under the jurisdiction of the juvenile court. It appears that this jurisdiction was obtained pursuant to a judgment of dependency or delinquency. Mr. Marmino appealed, asserting that it was error for the chancery court to share its jurisdiction with the juvenile court and that it, the chancery court, was obliged to make an order as to custody. In affirming the chancellor, Judge Swepston, later Justice Swepston, stated:

> We think it is a sound and simple view that the Chancery Court never loses jurisdiction of the question of custody, that is, the subject matter as part of a divorce proceeding, but the right and power to exercise that jurisdiction upon the person or the minor may be suspended temporarily or permanently either prior to or after the inception of the divorce case by reason of the exercise by the Juvenile Court of the special, exclusive jurisdiction conferred on it to determine whether the minor is "dependent" or "delinquent", as defined by the Statute and hence necessarily to determine custody.

*Id.* at 108.

Later, in *Kidd v. State*, 207 Tenn. 244, 338 S.W.2d 621 (1960), a case similar on the facts to the case under consideration, Justice Swepston reaffirmed the *Marmino* rule. *Kidd* began as a child custody case in the Criminal Court of Knox County through the filing of a petition for a writ of *habeas corpus*. The stipulated facts revealed that a divorce proceeding in Octo-ber, 1954 resulted in the Juvenile and Domestic Relations Court for Knox County awarding custody of the parties' infant child to the mother. Less than a year later, the child's grandmother filed a petition in the Juvenile Court of Knox County alleging the child to be a dependent and neglected child. In September, 1955 that court sustained the petition and committed temporary custody to the petitioner. Subsequently on March 1, 1960, a decree was entered in the Circuit Court of Knox County in an adoption proceeding. The decree stated in substance that the court found that the best interests of the minor child would be served if she was reared by her natural mother. The decree recited that the temporary custody of the child should end and that the child should be returned to her natural mother. The adoption petition was dismissed.

The *habeas corpus* petition filed some two weeks later alleged that the child was being legally restrained by her grandmother pursuant to a temporary custody order of the juvenile court. It further asserted that that court had no jurisdiction over the matter, contending that the domestic relations court alone retained jurisdiction over the custody of the child. The criminal court judge sustained the petition, ruling that the "Domestic Relations Court of Knox County is the only court having power and authority to make any valid order concerning the custody of the child, said court having first taken, and still retains, jurisdiction of said child"; 338 S.W.2d at 623. The court likewise held the order of the juvenile court of September, 1955 to be null and void.

In reversing the trial court, thereby dismissing the petition for *habeas corpus*, Justice Swepston wrote: "Every material question in this case was really decided in *Marmino v. Marmino*, 34 Tenn.App. 352, 238 S.W.2d 105." *Id.* at 624. In conclusion, the Supreme Court stated:

> We, therefore, are of opinion and so hold that the order of September 2, 1955, is a valid order and had the effect among other things of placing the permanent custody of this child under the control of

the Judge of the Juvenile and Domestic Relations Court of Knox County while exercising its jurisdiction of the custody of a delinquent, dependent or neglected child until the same should reach its full age and that no other court had or has any right or power whatever thereafter to change its custody or to make any orders in regard thereto, except with the consent of the Juvenile and Domestic Relations Court exercising its jurisdiction as a Juvenile Court.

*Id.* at 625. *See also State ex rel. Baker v. Turner*, 562 S.W.2d 435 (Tenn.App.1977).

The chronology of events of the case at bar proceeded along lines similar to that in *Kidd.* The filing of the petition by TDHS alleging dependency and neglect and the custody order of the Juvenile Court of Hamilton County occurred prior to the custody hearing in circuit court and the order of that court to the effect that custody should remain with Father. Upon the authorities cited herein, we hold that exclusive jurisdiction had vested in the juvenile court and that the Circuit Court of Hamilton County was without jurisdiction to hear and decide custody questions pertaining to these children so long as the juvenile court jurisdiction had attached. Lacking such jurisdiction, the circuit court order of March 7, 1986 is void. *See Hamm v. Hamm*, 30 Tenn.App. 122, 204 S.W.2d 113 (1947).

## II. RES JUDICATA.

■ TDHS contends on appeal that the doctrine of *res judicata* is not applicable for two reasons—first, because the judgment relied upon by the circuit court below as a basis for its ruling is void; and second, the doctrine of *res judicata* does not apply to the case at bar. We agree with TDHS on both counts. We have already held that the circuit court was without jurisdiction in the custody case, thus its judgment was void. A judgment rendered without jurisdiction of the subject matter is a nullity and cannot operate as *res judicata.*

*Hamm v. Hamm*, 30 Tenn.App. at 149, 204 S.W.2d at 123–24.

■ We also hold that the doctrine of *res judicata* is inapplicable. Father argued in his brief:

[T]he doctrine of res judicata is applicable to the Department of Human Services in that at the Circuit Court custody hearing, the Department of Human Services fully participated through its employees as witnesses and advice of its counsel, and the minor children were represented independently of the parents by a guardian ad litem. Moreover the Circuit Court made its decision based on the same set of facts, identical issues, and largely the same witnesses present in the Juvenile Court proceeding.

Both parties have correctly identified the definition of "res judicata," as:

An existing final judgment rendered upon the merits by a court of competent jurisdiction is conclusive of the rights, questions and facts in issue as to the parties *and their privies* in the same action in other judicial tribunals of concurrent jurisdiction. (emphasis added) *Shelly v. Gipson*, 218 Tenn. 1, 400 S.W.2d 709, 714 (1966).

TDHS was not in privity with either of the parties in the circuit court action. In the proceedings before us the parties are the State versus the minors and the parents. In the divorce proceeding in circuit court, the contest for the custody of these children is between the parents. In addition, there was not an identity of issues. In circuit court the issue to be determined was which parent is better fit to have custody. The issue before the juvenile court is whether or not these children are dependent and neglected due to the alleged sexual abuse by the father. The record in the circuit court case does not bear out the allegation of Father that "the Department of Human Services fully participated." [5] An examination of that record does not reveal TDHS as a party, nor does it reflect an appearance through counsel, nor the

---

**5.** The circuit court record is presently before this Court contemporaneously with the record in the case at bar.

**458**

questioning of witnesses by anyone on behalf of TDHS. Granted, Mother and TDHS may have a "common interest"—the welfare of the children. This is not sufficient. Furthermore, even if the same set of facts involved in the circuit court litigation must be shown in the case at bar, that is not sufficient in and of itself to establish privity between TDHS and Mother. *See Boring v. Miller*, 215 Tenn. 394, 386 S.W.2d 521 (1965). *See also In re Adoption of Johnson*, 678 S.W.2d 65 (Tenn.App.1984).

### III. ALLEGED DEFICIENCY OF PETITION.

Father contends that TDHS' petition is lacking in the requisite details as required by Rule 9, Tennessee Rules of Juvenile Procedure. He argues that the circuit court could have dismissed the petition for this reason. For reasons unknown to us, the circuit court neglected to rule on this ground. Notwithstanding, we hold that any alleged deficiency claimed by Father was harmless error. Father did not at any time in his brief or in argument assert that he was unaware of the details of the alleged sexual abuse or that he was prejudiced by the lack of any statement of specific details. Over six months elapsed between the filing of the petition and the hearing. At no time did Father ever file a motion for a more specific statement. This issue is wholly without merit.

We therefore reverse the judgment of the circuit court dismissing TDHS' petition on the ground of *res judicata*. The parties are entitled to a trial *de novo* in circuit court, as provided for by T.C.A. § 37-1-159(a). This cause is remanded to that court for that purpose. The order of the juvenile court shall remain in full force and effect until there is a contrary disposition on the merits by the circuit court. Costs in this cause are taxed to Father, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.