IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 17, 2018 Session

**BRADLEY JAMES COX v. LAURA NICOLE LUCAS**

**Appeal from the Circuit Court for Knox County
No. 110074   Gregory S. McMillan, Judge**

_____

**No. E2017-02264-COA-R3-CV**

_____

This opinion is being filed contemporaneously with our opinion in ***Minyard v. Lucas***, No. E2017-02261-COA-R3-CV.[1]   Each case involves a post-divorce custody dispute between Laura Nicole Lucas (mother) and one of her two ex-husbands.   In the present case, Bradley James Cox (father) filed a petition in the trial court for ex parte emergency relief and modification of the permanent parenting plan.   Nearly two years later, mother filed a motion to dismiss all orders resulting from father's petition as void for lack of subject matter jurisdiction.   Mother argued that father's petition included allegations of dependency and neglect, which implicated the exclusive original jurisdiction of the juvenile court.   After a hearing on the matter, the trial court denied mother's motion. Mother appeals.   We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Austin Lucas, Brentwood, Tennessee, for the appellant, Laura Nicole Lucas.

R. Deno Cole, Knoxville, Tennessee, for the appellee, Lewis Alvin Minyard.

**OPINION**

**I.**

The child at the center of this custody dispute was born to mother and father on December 26, 2003.  Mother and father were married on May 5, 2005.  After three years

---

[1] The Court considered these cases together at oral argument.  The attorneys in both cases are the same.

of marriage, they were granted a final decree of divorce by the trial court. The court established a permanent parenting plan and designated mother as the primary residential parent.

On November 10, 2015, shortly before the child's twelfth birthday, father filed a petition in the trial court requesting ex parte emergency relief and modification of the permanent parenting plan. The petition contained the following factual allegations:

A. Mother is living in conditions that are not healthy for the minor child's upbringing (see attached Exhibit 1). The child is uncomfortable having friends over to the home, due to the living conditions.[2]

B. The minor child is complaining about multiple men coming to the residence, drinking in excess, and paying money to Mother.

C. Minor child had indicated that Mother is "smoking pot" outside of the vehicle with child in the vehicle, "smoking pot" in the car with minor child in the residence. Mother leaves her pipe and marijuana where the minor child has access to same.

D. The minor child is often alone without any adult supervision, and Mother is unavailable to tend to the minor child's needs. The minor child is left alone at night with Mother returning in the early morning hours. Mother routinely will tell the minor child that she is going to the store and does not return for hours at a time.

E. The minor child has to get herself ready for school and on the bus with no supervision by Mother. Mother also allows child to stay home "sick" and then takes child with her on trips to do odd jobs.

F. For Father's co-parenting time, the minor child returns to Father in unclean clothing and without proper undergarments.

G. The minor child complains of having little or no food in the home. Mother sends the minor child to the neighbors to ask for food or beverages.

---

[2] Exhibit 1 contained photographs depicting mother's home in a general state of disarray.

H. The utilities to the house have been cut off numerous times.

I. The minor child complains of Mother sleeping in excess and Mother is unable to be awakened.

K. Mother has anger issues and uses profanity towards the minor child on a routine basis.

L. Mother has told the minor child to lie to school officials about her tardiness or absences.

M. The minor child has come to Father for help, and desires to live with him; however, she is terrified of Mother. Without the Court's protection, the minor child is in reasonable fear that Mother may cause emotional or physical harm to her.

N. Subsequent to the child alarming Father of her concerns, Father has investigated the above and other matters.

Based on the foregoing facts and circumstances, the best interest of the minor child is to be placed in exclusive care, custody and control of Father. The minor child is without the proper care and supervision of Mother. Unless the Court enters an immediate Order granting Father temporary exclusive residential care and control of said child, the minor child is in danger of immediate and irreparable harm.

On the same day, the trial court entered an interim emergency order directing that the child "be immediately placed in the exclusive care, custody and control of the Father . . . pending a hearing within fifteen (15) days . . . ." After a preliminary hearing, the trial court entered an order granting mother supervised visitation and telephone contact with the child, reserving all other issues until the final hearing. On July 17, 2017, the trial court established a permanent parenting plan that designated father as the primary residential parent.

On September 15, 2017, mother, represented by new counsel, filed a motion to dismiss father's November 10, 2015 petition and all orders resulting therefrom for lack of subject matter jurisdiction. Mother argued that father's petition included allegations of dependency and neglect, which implicated the exclusive original jurisdiction of the juvenile court. On October 20, 2017, the trial court heard arguments from both sides on

issue of subject matter jurisdiction. Ultimately, the court denied mother's motion to dismiss. Mother appealed.

## II.

The sole issue in this appeal is whether the trial court erred by denying mother's motion to dismiss for lack of subject matter jurisdiction.

## III.

Because "a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness." *Jackson v. Tenn. Dept. of Corr.*, 240 S.W.3d 241, 243 (Tenn. Ct. App. 2006) (quoting *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). In *Holley v. Holley*, this Court discussed the significance of subject matter jurisdiction:

> A court must have jurisdiction over the subject matter of the proceeding as well as over the parties. *State ex rel. Whitehead v. Thompson*, No. 01A01–9511–CH–00538, 1997 WL 749465 at *2 (Tenn. Ct. App. Dec. 5, 1997). The question of subject matter jurisdiction relates to a court's power to adjudicate a particular type of controversy. *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). . . . A court cannot enter a valid, enforceable order without subject matter jurisdiction. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000). Accordingly, when subject matter jurisdiction is questioned the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate its cases. *Staats v. McKinnon*, 206 S.W.3d 541 [532] at 542 (Tenn. Ct. App. 2006). Subject matter jurisdiction may be raised at any time by the parties or by the appellate court sua sponte on appeal. *County of Shelby v. City of Memphis*, 211 Tenn. 410, 365 S.W.2d 291 (Tenn. 1963).

420 S.W.3d 756, 759 (Tenn. Ct. App. 2013) (quoting *Graham v. Graham*, No. E2008–00180–COA–R3–CV, 2009 WL 167071, at *6 (Tenn. Ct. App., filed Jan. 26, 2009)).

# IV.

Because a party can raise the issue of subject matter jurisdiction at any time, it is inconsequential that mother waited over two and a half years to file her motion to dismiss. *See id.* Rather, the heart of this controversy is a dispute about the "nature of the case." *Id.* Father characterizes the case as a post-divorce child custody dispute; mother, on the other hand, characterizes the case as a dependency and neglect action. That distinction is important in light of the following statutes.

In Tennessee, both circuit courts and chancery courts are statutorily authorized to grant divorces and to make child custody determinations in connection with divorce proceedings. Tenn. Code Ann. § 16-10-108 (2009); Tenn. Code Ann. § 36-6-101(a)(1) (2017). Significantly, Tenn. Code Ann. § 36-6-101(a)(1) provides that a final decree of divorce "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require." *Id.*; *see also* Tenn. Code Ann. § 36-6-217 (providing for "exclusive, continuing jurisdiction" over child custody determinations). For example, if there has been "a material change in circumstances," a parent may file a petition to modify a court-ordered permanent parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). In addition, a parent may petition the court for an emergency, temporary modification of the parenting plan; if "the court finds that the child will be subject to a likelihood of substantial harm absent the temporary modification," the court can modify the residential schedule before a final hearing on the matter. Tenn. Code Ann. § 36-6-405(b) (2017). If the court enters such an order ex parte, "the respondent parent shall be entitled to an expedited hearing within fifteen (15) days of the entry of the temporary modification order." *Id.*; *see also* Tenn. R. Civ. P. 65.07 ("The provisions of this Rule shall be subject to any contrary statutory provisions governing restraining orders or injunctions. In domestic relations cases, restraining orders or injunctions may be issued upon such terms and conditions and remain in force for such time as shall seem just and proper to the judge to whom application therefor is made[.]").

Nevertheless, the subject matter jurisdiction of circuit and chancery courts over divorce proceedings and subsequent child custody matters must be considered in conjunction with the jurisdiction allocated to juvenile courts. *See* Tenn. Code Ann. § 36-6-101(c) ("Nothing in this chapter shall be construed to alter, modify or restrict the exclusive jurisdiction of the juvenile court pursuant to § 37-1-103."); Tenn. Code Ann. § 36-6-411(a) ("Nothing in this part shall be construed to alter, modify or restrict the exclusive jurisdiction of the juvenile court pursuant to § 37-1-103."). The General Assembly has granted juvenile courts "exclusive original jurisdiction" over "[p]roceedings in which a child is alleged to be delinquent, unruly or dependent and neglected . . . ." Tenn. Code Ann. § 37-1-103(a)(1) (2014). Once a juvenile court acquires exclusive jurisdiction over a case,

such jurisdiction shall continue until the case has been

- 5 -

dismissed, or until the custody determination is transferred to another juvenile, circuit, chancery or general sessions court exercising domestic relations jurisdiction, or until a petition for adoption is filed . . . . This subsection (c) does not establish concurrent jurisdiction for any other court to hear juvenile cases, but permits courts exercising domestic relations jurisdiction to make custody determinations in accordance with this part.

Tenn. Code Ann. § 37-1-103(c).

At first blush, the aforementioned statutes appear to be in tension with one another; one statute gives juvenile courts "exclusive original jurisdiction" over dependency and neglect actions and other statutes authorize circuit courts and chancery courts to grant divorces and to exercise jurisdiction over subsequent child custody determinations "as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1); *see also* Tenn. Code Ann. § 36-6-217 (providing for "exclusive, continuing jurisdiction" over child custody determinations). Yet, the statutes purport to be congruent and not contradictory. *See* Tenn. Code Ann. §§ 36-6-101(c), -411(a); Tenn. Code Ann. § 37-1-103(c). In attempt to effectuate each statutory provision, our courts have consistently held to the following interpretation:

> the Chancery Court [and circuit court] never loses jurisdiction of the question of custody, that is, the subject matter as part of a divorce proceeding, but the right and power to exercise that jurisdiction upon the person of the minor may be suspended temporarily or permanently either prior to or after the inception of the divorce case by reason of the exercise by the Juvenile Court of the special, exclusive jurisdiction conferred on it to determine whether the minor is 'dependent' or 'delinquent', as defined by the Statute and hence necessarily to determine custody.

*Kidd v. State ex rel. Moore*, 338 S.W.2d 621, 624 (Tenn. 1960) (quoting *Marmino v. Marmino*, 238 S.W.2d 105, 108 (Tenn. Ct. App. 1950)); *see also State of Tenn. Dept. of Human Servs. v. Gouvitsa*, 735 S.W.2d 452, 456 (Tenn. Ct. App. 1987) ("This issue was decided in Tennessee in [*Marmino*] and subsequently has been followed by all appellate courts of this state.").

In most cases, this jurisdictional quandary arises after a parent has filed a petition for dependency and neglect in the juvenile court. *E.g.*, *Branch v. Thompson*, No. M1998-00511-COA-R3-CV, 2000 WL 898759, at *1 (Tenn. Ct. App., filed July 7, 2000); *Hicks v. Hicks*, No. 01A01-9309-CH-00417, 1994 WL 108896, at *1 (Tenn. Ct.

App., filed Mar. 30, 1994); *George v. George*, No. 02A01-9711-CH-00279, 1999 WL 252710, at *1 (Tenn. Ct. App., filed Apr. 28, 1999); *Gouvitsa*, 735 S.W.2d at 453; *Marmino*, 238 S.W.2d at 107. In those cases, we held that the circuit or chancery court lacked subject matter jurisdiction because the juvenile court's exclusive original jurisdiction attached upon the filing of a dependency and neglect petition in the juvenile court. *Branch* 2000 WL 898759, at *4; *Hicks*, 1994 WL 108896, at *2; *George*, 1999 WL 252710, at *4; *Gouvitsa*, 735 S.W.2d at 457; *Marmino*, 238 S.W.2d at 108-09. In contrast, we have held that a juvenile court's exclusive original jurisdiction *does not attach* when a juvenile court *dismisses* a petition alleging dependency and neglect. *Farley v. Farley*, No. W2000-01987-COA-R9-CV, 2001 WL 846075, at *3 (Tenn. Ct. App. July 20, 2001); *P.E.K. v. J.M. & C.Y.M.*, No. M2000-02737-COA-R10-CV, 2001 WL 356673, at *5 (Tenn. Ct. App., filed Apr. 11, 2001)).

On a few occasions we have held that a juvenile court's exclusive original jurisdiction attaches even when the petition filed in the juvenile court does not expressly include the words "dependency and neglect" – so long as the "substance" of the petition contains allegations of dependency and neglect. *E.g.*, *J.W.G. v. T.L.H.G.*, No. M2002-02656-COA-R3JV, 2003 WL 22794537, at *4 (Tenn. Ct. App., filed Nov. 25, 2003); *Fletcher v. Fletcher*, No. E2001-01223-COA-R3JV, 2002 WL 459012, at *3 (Tenn. Ct. App., filed Mar. 26, 2002); *State o/b/o Whitehead v. Mattie*, No. 01A01-9511-CH-00538, 1997 WL 749465, at *1 n.1 (Tenn. Ct. App., filed Dec. 5, 1997).

This case is different from the cases cited above because neither party has filed a petition alleging dependency and neglect *in the juvenile court*. Instead, mother argues that the juvenile court's exclusive original jurisdiction attached when father filed his petition to modify the parenting plan *in the circuit court*. We have identified at least three post-divorce cases in which other parents have made the same argument. We will briefly discuss each of those cases.

In *Munday v. Munday*, No. E1999-02605-COA-R3-CV, 2000 WL 1154500 (Tenn. Ct. App., filed Aug. 15, 2000), the parties were granted a divorce in chancery court. Several years later, father filed a petition in the chancery court to modify the permanent parenting plan based on the following allegations:

> [Mother's] mental and emotional status has changed so as to render her disabled from employment and from managing the emotional, physical and financial burdens associated with the responsibility of being a primary residential custodian of minor children. [Mother's] emotional or psychological disability results in a significant degree of lethargy which, in turn, causes the minor children to be called upon to maintain the home and care for the mother, essentially reversing the roles of mother and children. Also, [Mother] has separated

- 7 -

from current husband and, upon information and belief, [Father] alleges that during the period of separation from her current husband [Mother] has exposed the minor children to inappropriate influences in her household.

*Id.* at *1. Mother filed a motion to dismiss for lack of subject matter jurisdiction, arguing that father's petition "raises issues of dependency and neglect, which . . . placed Father's petition within the exclusive jurisdiction of the juvenile court." *Id.* The trial court denied mother's motion. *Id.* This Court affirmed:

> We find [mother's] argument wholly without merit. Although Mother is correct in asserting that, pursuant to T.C.A. § 37-1-103(a)(1), the juvenile court has exclusive jurisdiction over proceedings in which a party seeks to have a child declared dependent and neglected, Mother mischaracterizes the nature of the instant proceeding. This is not a proceeding to have a child declared dependent and neglected; this is a post-divorce proceeding seeking a change in a custodial arrangement. As such, it was properly brought in chancery court. Therefore, the chancery court, the site of the original divorce proceedings, properly exercised jurisdiction over Father's petition.

*Id.* at *7.

We confronted a similar situation in *Holley v. Holley*, 420 S.W.3d 756 (Tenn. Ct. App. 2013). In *Holley*, the parties were divorced in circuit court. *Id.* at 757. Two years later, the father filed a petition in the circuit court seeking a change of custody based on allegations that the mother failed to follow the recommendations of medical experts who diagnosed the parties' children with various intellectual and emotional disorders. *Id.* at 757-58. Specifically, father's petition alleged that "the minor children will suffer immediate and irreparable injury if the recommendations of the experts are ignored and the minor children's educational, psychological and behavioral needs continue to be ignored by Mother." *Id.* at 758.

The mother in *Holley* filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the substance of father's petition alleged dependency and neglect, which implicated the juvenile court's exclusive original jurisdiction. *Id.* at 759. The trial court granted mother's motion to dismiss. *Id.* According to the trial court, the substance of father's petition alleged that the parties' children were dependent and neglected as defined by Tenn. Code Ann. § 37-1-102(b)(13)(D), which includes children "[w]hose parent . . . neglects or refuses to provide necessary medical, surgical,

institutional, or hospital care for such child."[3]  *Id.*  Accordingly, the court concluded that the petition triggered the juvenile court's exclusive original jurisdiction.  *Id.*

On appeal, this Court accepted the premise that "[a] petition [filed in circuit court] alleging dependency and neglect, either expressly or in substance, implicates the exclusive original jurisdiction of the juvenile court."  *Id.* at 760 (citing *J.W.G.*, 2003 WL 22794537, at *4).  Nevertheless, we reversed the decision of the trial court because

> [i]n spite of the tone of urgency and severe language, we believe the allegations in the Petition are not tantamount to allegations of dependency and neglect under the statute.  The allegations are more in the nature of a disagreement over the long-term manner of addressing the Children's psychological, behavioral, and educational issues. . . .  We find nothing in the statutes to support a determination that our General Assembly intended by enacting Tenn. Code Ann. § 37-1-103(a)(1) to strip jurisdiction from a court that has handled a divorce and post-divorce matters solely because the parents disagree on how to address their child's medical needs.  Such an intention by our General Assembly would have resulted in a wholesale shifting of custody cases to the juvenile court . . . .

*Id.*  We therefore reversed the trial court's decision that it lacked subject matter jurisdiction over the case.

We addressed this issue most recently in *Tavino v. Tavino*, No. E2013-02587-COA-R3CV, 2014 WL 5430014 (Tenn. Ct. App., filed Oct. 27, 2014).  In *Tavino*, the parties were divorced in chancery court.  *Id.* at *2.  The father filed a petition in chancery court for modification of the permanent parenting plan and termination of father's child support obligation.  *Id.*  The trial court entered an order that modified the parenting plan by designating father the primary residential parent and terminating his wage assignment.  *Id.*  The court also ordered mother to pay father child support.  *Id.* at *3.  Several months later, mother filed a Tenn. R. Civ. P. 60.02 motion to alter or amend the judgment.  *Id.* at *5.  Mother's motion included an allegation that "[t]he minor child of these parties remains in severe danger, from himself and others, and the Father has refused to arrange critical evaluation of his mental condition or arrange other help for this child."  *Id.*  The trial court determined that it lacked subject matter jurisdiction because mother's petition "constituted a dependency and neglect claim rather than a petition to modify a permanent

---

[3] In *Holley*, we emphasized that "[t]he Trial Court invoked this definition of dependency and neglect in its oral ruling, and, although the law contains several other definitions, this is the most relevant for the instant appeal."  420 S.W.3d at 760 n. 1.

parenting plan." *Id.* This Court affirmed. *Id.* at *12. We agreed with the trial court's conclusion "that Mother's allegations against Father's parenting of the Child constituted a dependency and neglect claim over which the juvenile court would have sole jurisdiction." *Id.* at *11.

Returning to the present case, mother argues that the trial court lacked subject matter jurisdiction because father's November 10, 2015 petition included allegations that implicated the exclusive original jurisdiction of the juvenile court. Specifically, mother claims that all of the allegations in father's petition are "tantamount to alleging dependency and neglect" as defined in sections (B), (C), (F), and (G) of Tenn. Code Ann. § 37-1-102(b)(13) (Supp. 2018).[4] Those sections of the statute define a "dependent and neglected" child to include a child:

> (B) Whose parent, guardian or person with whom the child lives, by reason of cruelty, mental incapacity, immorality or depravity is unfit to properly care for such child;
>
> (C) Who is under unlawful or improper care, supervision, custody or restraint by any person, corporation, agency, association, institution, society or other organization or who is unlawfully kept out of school;
>
> \*       \*       \*
>
> (F) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others;
>
> (G) Who is suffering from abuse or neglect;

Tenn. Code Ann. § 37-1-102(b)(13).

We are not persuaded that *all* statements in father's petition are tantamount to allegations of dependency and neglect under the portions of the statutory definition quoted above. For instance, the petition alleged that "Mother is living in conditions that are not healthy for the minor child's upbringing." That allegation was supported by an

---

[4] Specifically, mother's brief asserts that: paragraphs (B), (D), (E), (F), (H), and (I) of father's petition fit within section (C) of the statutory definition; paragraphs (A), (B), (C), (G), (K), and (L) of father's petition fit within section (F); paragraph (M) fits within section (G); and that paragraph (B) fits within section (B).

- 10 -

attached exhibit depicting mother's home in a general state of disarray. According to the petition, "[t]he child is uncomfortable having friends over, due to the living conditions." We cannot say that this constitutes an allegation that the child is "in such condition of want or suffering . . . as to injure or endanger the morals or health of such child . . . ." The petition also alleged that mother has had male guests who "drink[ ] in excess" and "pay[ ] money to Mother." It is unclear from the petition how often this allegedly occurs and for what reason individuals are paying money to mother. This is not an allegation that mother is unfit to properly care for the child or that the child is in danger. The same can be said of the allegation that mother "sleep[s] in excess" and that mother "is unable to be awakened." Father's allegation that "[t]he utilities to the house have been cut off numerous times" is concerning, but the petition did not allege that the utilities were currently cut off or that the health of the child was presently in danger. Finally, mother's alleged use of profanity, although not commendable, does not seem to rise to the level of "immorality or depravity" that makes a parent "unfit" to properly care for a child.

Other allegations in the petition are more serious. For example, the petition alleged that

> [t]he minor child is often alone without any adult supervision, and Mother is unavailable to tend to the minor child's needs. The minor child is left alone at night with Mother returning in the early morning hours. Mother routinely will tell the minor child that she is going to the store and does not return for hours at a time.

The petition also claimed that the child "has to get herself ready for school and on the bus with no supervision by Mother." According to the website of the Juvenile and Family Courts:

> There is no legal age for children to stay at home alone. Parents are advised to use their best judgment, keeping the child's maturity level and safety issues in mind. Younger children have a greater need for supervision and care than older children. Obviously, young children under age 10 should not be left without supervision at any time. In most cases, older teenage children may be left alone for short periods of time.

Tennessee Administrative Office of the Courts, Juvenile & Family Courts, FAQS, http://www.tncourts.gov/courts/juvenile-family-courts/faqs. The child in the present case was eleven years old at the time of father's petition. It is probably unfair to say that an eleven-year-old child cannot be left home alone at any time or that such a child cannot be trusted to get on the school bus without supervision. However, father's petition alleged

- 11 -

that the child was "often" left home alone, even in the middle of the night. If these allegations do not fit squarely within section (C) of the statutory definition, they are very close.

The most serious allegations in father's petition concern mother's alleged use of marijuana in the presence of the child, the child's access to mother's marijuana and pipe, the child's complaints of "little or no food in the home," and mother's alleged habit of "allow[ing] [the] child to stay home 'sick' and then tak[ing] [the] child with her on trips to do odd jobs."

In *In re K.A.P.*, this Court held that evidence of a mother's weekly marijuana use "d[id] not amount to clear and convincing evidence that Mother is 'unfit to properly care for [Son]' or that Son is dependent and neglected under any subsection in Section 37–1–102(b)(12)." In so holding, however, we specifically observed that there was no evidence that mother used marijuana in the presence of the child. In the case at bar, father's petition alleged that mother's drug use occurred in the presence of the child. Moreover, the petition alleged that the child had access to both marijuana and mother's pipe. We think these allegations fit within Tenn. Code Ann. § 37-1-102(b)(13)(F).

Assertions that there is "little or no food in the home" and that the child returns to father without clean clothes or even proper undergarments raise serious questions about the child's health and hygiene. We think these allegations fit within Tenn. Code Ann. § 37-1-102(b)(13)(F).

Finally, father's petition alleged that mother "allows child to stay home 'sick' and then takes child with her on trips to do odd jobs." The petition also alleged that mother has instructed the child to lie "to school officials about her tardiness or absences." Parents have a legal obligation to "cause the[ir] child or children to attend public or nonpublic school . . . ." Tenn. Code Ann. § 49-6-3001(c)(1) (2016). A parent who fails to do so "commits educational neglect, which is a Class C misdemeanor." Tenn. Code Ann. § 49-6-3009(a) (Supp. 2018). Because father's petition alleged that mother permits the child to skip school without justification and encourages the child to lie about doing so, the petition alleged that the child was "unlawfully kept out of school" by mother. *See* Tenn. Code Ann. § 37-1-102(b)(13)(C).

In light of the foregoing analysis, we conclude that father's petition contained assertions that were tantamount to allegations of dependency and neglect. Accordingly, the trial court lacked subject matter jurisdiction and all actions taken by the court are void for lack of subject matter jurisdiction.

## V.

The judgment of the trial court denying mother's motion to dismiss for lack of

- 12 -

subject matter jurisdiction is hereby reversed.  We vacate all orders of the trial court that resulted from father's November 10, 2015 petition, and we remand the case for further proceedings.  Costs on appeal are taxed against the appellee, Bradley James Cox.

_____
CHARLES D. SUSANO, JR., JUDGE