# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 15, 2013 Session

## PAULA JEAN HOLLEY v. JAMES FRANKLIN HOLLEY, III

### Appeal from the Circuit Court for Knox County
### No. 110053      Bill Swann, Judge

### No. E2012-01584-COA-R3-CV - Filed May 31, 2013

The issue in this appeal is whether the circuit court that had granted the divorce lost subject matter jurisdiction to hear a later petition for change of custody. James Franklin Holley, III ("Father") and Paula Jean Holley ("Mother") were divorced in the Fourth Circuit Court for Knox County ("the Trial Court"). Mother was given primary custody of the parties' two minor children ("the Children"), with Father having co-parenting time. Later, Father filed a petition ("the Petition") to change custody based on Mother's alleged neglect of the Children's psychological and educational issues. The Trial Court held that it lacked jurisdiction to hear the Petition as juvenile court has exclusive jurisdiction to hear petitions alleging dependency and neglect. Father appeals. We hold that the Petition did not allege under the relevant statutes that the Children were dependent and neglected and, therefore, the Trial Court did have jurisdiction to hear the Petition. We reverse the judgment of the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Laura Jane Webb, Maryville, Tennessee, for the appellant, James Franklin Holley, III.

Margaret Beebe Held, Knoxville, Tennessee, for the appellee, Paula Jean Holley.

# OPINION

## Background

Mother and Father divorced in July 2008 in the Trial Court. A permanent parenting plan was incorporated. Mother was designated primary residential parent. Father was to have 80 residential days per year of co-parenting time with the Children. Mother moved to North Dakota, while Father remained in Knoxville, Tennessee. Due to circumstances apparently in dispute, Mother and Father departed from the original plan. In 2009, the Children returned to be with Father in Knoxville for the school year.

In June 2010, Father filed the Petition, wherein he sought a change of custody. The Petition alleged that Father had taken the Children to see experts and determined that they suffered from certain developmental issues. The parties' younger child ("CH"), born 2005, was diagnosed with Oppositional Defiant Disorder, sensory perception disorder, developmental delay, and a language processing disorder. Father alleged that Mother's response to CH's behavioral problems was to say "he will grow out of it." According to Father, CH is undergoing "occupational therapy once a month, behavioral therapy once a week, and speech and language therapy at least once a week." The parties' other child ("PH"), born 2000, was diagnosed with Reading Disorder, Disorder of Written Expression, and Attention Deficit/Hyperactivity Disorder. Father alleged that PH's oral reading fluency had worsened while in North Dakota. Father further alleged that Mother failed to give the Children the proper treatment for their conditions. According to the Petition, in relevant part:

17. Father avers that during the eight (8) months the minor children have been in his physical custody he has continued to pay his monthly child support obligation in the amount of $1750.00 per month. Father avers Mother would only agree to allow the minor children to remain in Knoxville for the school year if Father continued to pay her child support. Father further avers Mother refused to pay any portion of the psychological testing, educational testing, counseling, occupational therapy or any of the other necessary expenses for the minor children for the past eight (8) months.

18. Father avers that Mother provides an unstable home for the minor children in North Dakota in that he learned the minor children were living with Mother and her boyfriend in North Dakota. Father further avers Mother is neglectful regarding the educational and behavioral needs of the minor children.

19. Father avers that he is afraid for the welfare of the minor children and that the rights of the minor children will be violated by Mother and that the minor

children will suffer immediate harm and irreparable injury if Mother is allowed to keep the minor children in North Dakota and not return them to Knoxville for the 2010-2011 school year beginning September 1, 2010. Father avers the minor children will suffer immediate and irreparable injury if the recommendations of the experts are ignored and the minor children's educational, psychological and behavioral needs continue to be ignored by Mother.

20. That a material change in circumstances has occurred and that the current Permanent Parenting Plan [is] no longer in the best interests of the minor children. That it would be in the best interests of the minor children to award legal and physical custody of the minor children to Father and that Mother be awarded co-parenting time during the summer break and other holidays and breaks from school.

In a local rule 28B verified statement filed along with the Petition, Father stated, in part:

I should be designated the primary caregiver of the children because it is in their best interest for the following reasons: For the past 8 months I have devoted a great deal of time and effort to addressing the serious educational, social, behavioral and psychological needs of the minor children. These needs have been ignored by Mother for the past two years. Both boys have made and are continuing to make progress. Mother is not supportive of the children seeing professionals to address these problems. Additionally, [PH]'s educational needs are critical and I do not believe the school system in North Dakota nor Mother will address his needs.

The Petition noted that this was the first application for "extraordinary relief." The Trial Court subsequently entered an *ex parte* order transferring custody of the Children to Father.

In April 2012, Mother filed a motion to dismiss the Petition on the basis that the Trial Court lacked subject matter jurisdiction. Specifically, Mother argued that the Petition alleged dependency and neglect, which, pursuant to Tenn. Code Ann. § 37-1-103(a)(1), would put it within the exclusive original jurisdiction of the juvenile court. In July 2012, the Trial Court granted Mother's motion to dismiss, stating in relevant part:

1. The original Petition alleges that the mother has neglected the children's medical needs. Based on these allegations, this Court acted pursuant to T.R.C.P. 65.07 and Local Rule 28, and entered an *ex parte* Order transferring custody to the father.

2. The Juvenile Court has exclusive original jurisdiction over all cases alleging dependency and neglect; therefore, the original order issued by this Court is void.

Father filed a timely appeal to this Court.

## **Discussion**

Though not stated exactly as such, Father raises one issue on appeal: whether the Trial Court erred in dismissing his petition for change of custody for lack of subject matter jurisdiction.

We have previously discussed subject matter jurisdiction and its significance:

A court must have jurisdiction over the subject matter of the proceeding as well as over the parties. *State ex rel. Whitehead v. Thompson*, No. 01A01-9511-CH-00538, 1997 WL 749465 at *2 (Tenn. Ct. App. Dec. 5, 1997). The question of subject matter jurisdiction relates to a court's power to adjudicate a particular type of controversy. *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). Subject matter jurisdiction "relates to the nature of the cause of action and the relief sought" and "is generally defined by the constitution or statute and conferred by the authority that organizes the courts." *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977). The parties cannot confer subject matter jurisdiction on a court by either appearance, plea, consent, silence, or waiver. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). A court cannot enter a valid, enforceable order without subject matter jurisdiction. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000). Accordingly, when subject matter jurisdiction is questioned the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate its cases. *Staats v. McKinnon*, 206 S.W.3d 541 at 542 (Tenn. Ct. App. 2006). Subject matter jurisdiction may be raised at any time by the parties or by the appellate court *sua sponte* on appeal. *County of Shelby v. City of Memphis,* 211 Tenn. 410, 365 S.W.2d 291 (Tenn. 1963).

*Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *6 (Tenn. Ct. App. Jan. 26, 2009), *no appl. perm. appeal filed*.

The juvenile court has exclusive original jurisdiction over "[p]roceedings in which a child is alleged to be delinquent, unruly or dependent and neglected, or to have committed a juvenile traffic offense . . . ." Tenn. Code Ann. § 37-1-103(a)(1) (2010). The pertinent definition of a dependent and neglected child is one "[w]hose parent, guardian or custodian neglects or refuses to provide necessary medical, surgical, institutional or hospital care for such child." Tenn. Code Ann. § 37-1-102 (b)(12)(D) (2010).[1]

A petition alleging dependency and neglect, either expressly or in substance, implicates the exclusive original jurisdiction of the juvenile court. *J.W.G v. T.L.H.G.*, No. M2002-02656-COA-R3-JV, 2003 WL 22794537, at *4 (Tenn. Ct. App. Nov. 25, 2003), *Rule 11 appl. perm. appeal denied May 10, 2004.* In the present case, the Petition never expressly alleges 'dependency and neglect.' We, however, must look to the substance of the Petition to see if what it alleges is tantamount to alleging dependency and neglect under the statute.

The Petition does contain rather urgent rhetoric at places, such as warnings of "irreparable injury," "immediate harm," and "immediate and irreparable injury." Also, Father alleged that "Mother is neglectful regarding the educational and behavioral needs of the minor children." The Petition warned of "immediate and irreparable injury if the recommendations of the experts are ignored and the minor children's educational, psychological and behavioral needs continue to be ignored by Mother."

We note that in domestic and family controversies such as the present case, rhetoric often can be intemperate. This heated rhetoric sometimes may manifest itself in the pleadings of these cases. However, we ultimately must look to the substance of what has been alleged. In spite of the tone of urgency and severe language, we believe the allegations in the Petition are not tantamount to allegations of dependency and neglect under the statute. The allegations are more in the nature of a disagreement over the long-term manner of addressing the Children's psychological, behavioral, and educational issues.

Nothing in our Opinion should be construed to diminish the importance of psychological, behavioral, or educational problems relative to what may be regarded traditionally as medical problems. We, however, do not believe our General Assembly contemplated facts such as those alleged in this case when it vested the juvenile court with exclusive original jurisdiction over dependency and neglect. We find nothing in the statutes to support a determination that our General Assembly intended by enacting Tenn. Code Ann. § 37-1-103(a)(1) to strip jurisdiction from a court that has handled a divorce and post-divorce

_____

[1]The Trial Court specifically invoked this definition of dependency and neglect in its oral ruling, and, although the law contains several other definitions, this is the most relevant for the instant appeal.

matters solely because the parents disagree on how to address their child's medical needs. Such an intention by our General Assembly would have resulted in a wholesale shifting of custody cases to the juvenile court from the specific courts vested by our General Assembly with the jurisdiction to make custody decisions in divorce cases and post-divorce matters solely because the parents disagree on how best to address their child's medical needs. We are not holding that a dispute between parents concerning their child's medical care never can be sufficient to trigger the dependency and neglect provision of Tenn. Code Ann. § 37-1-103(a)(1). We instead hold here only that the Petition did not do so.

The Trial Court is vested with the subject matter jurisdiction to hear divorce cases. Tenn. Code Ann. § 16-10-108 (2009). These parties were divorced in the Trial Court. Divorce decrees remain within the control of courts, and child custody arrangements may be modified as appropriate under the law and the facts of the case. Tenn. Code Ann. § 36-6-101 (a)(1) (2010). We hold that the Trial Court had subject matter jurisdiction to hear the Petition because Tenn. Code Ann. § 37-1-103(a)(1) (2010) is not applicable here.[2] We reverse the judgment of the Trial Court.

## Conclusion

The July 6, 2012 Final Order of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellee, Paula Jean Holley.

_____
D. MICHAEL SWINEY, JUDGE

---

[2]Father also argued that the Trial Court erred in declining his oral motion to amend the Petition to remove certain language that fueled the jurisdictional issue. In light of our decision, we need not address this argument.