IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 17, 2018 Session

**LEWIS ALVIN MINYARD v. LAURA NICOLE LUCAS**

**Appeal from the Circuit Court for Knox County**
**No. 93853     Gregory S. McMillan, Judge**

_____

**No. E2017-02261-COA-R3-CV**

_____

This opinion is being filed contemporaneously with our opinion in *Cox v. Lucas*, No. E2017-02264-COA-R3-CV.[1]   Each case involves a custody dispute between Laura Nicole Lucas (mother) and one of her two ex-husbands.   In the present case, Lewis Alvin Minyard (father) filed a petition in the trial court for ex parte emergency relief and modification of the permanent parenting plan.   Over two and a half years later, mother filed a motion to dismiss all orders resulting from father's petition as void for lack of subject matter jurisdiction.   Mother argued that father's petition included allegations of dependency and neglect, which implicated the exclusive original jurisdiction of the juvenile court.   After a hearing on the matter, the trial court denied mother's motion. Mother appeals.   We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Austin Lucas, Brentwood, Tennessee, for the appellant, Laura Nicole Lucas.

R. Deno Cole, Knoxville, Tennessee, for the appellee, Lewis Alvin Minyard.

**OPINION**

**I.**

Mother and father were married on November 9, 2000.  Their marriage resulted in the birth of one child, who is now at the center of this custody dispute.  On August 5,

---

[1] The Court considered these cases together at oral argument.  The attorneys in both cases are the same.

2003, mother and father were granted a final decree of divorce by the trial court. The court established a permanent parenting plan that designated mother as the primary residential parent.

On November 5, 2014, shortly before the child's thirteenth birthday, father filed a petition in the trial court requesting ex parte emergency relief and modification of the permanent parenting plan. The petition contained the following factual allegations:

A. Mother is living in conditions that are not healthy for the minor child's upbringing (see attached Exhibit 1). The child has never had a friend over to the home, due to the living conditions.[2]

B. The minor child is complaining about multiple men coming to the residence, drinking in excess, and paying money to Mother.

C. Pill bottles with "labels torn off" are laying about the residence.

D. The minor child is often alone without any adult supervision, and Mother is unavailable to tend to the minor child's needs. The minor child is left alone at night with Mother returning in the early morning hours. Mother routinely will tell the minor child that she is going to the store and does not return for hours at a time.

E. The minor child has been suspended for skipping school and vandalizing school property. Said conduct is not characteristic of the minor child.

F. Father recently was informed that the minor child has been diagnosed with possible depression. The minor child's doctor recommended a behavioral therapist to Mother, and she has made no substantial efforts to comply with the doctor's recommendations.

G. The minor child continues to decline academically and has ten (10) unexcused absences to date. The minor child is failing two (2) of her core courses. She is without the necessary help to end the downward spiral.

---

[2] Exhibit 1 contained photographs depicting mother's home in a general state of disarray.

H. For Father's co-parenting time, the minor child returns to Father unclean and smelling of a foul odor. The minor child complains that she does not have clean clothes at Mother's home.

I. The minor child complains of having little food in the home. The minor child will visit a neighbor's house, at Mother's request, and complain of being hungry to get food.

J. The utilities to the house have been cut off numerous times. The minor child has resorted to using a neighbor's shower.

K. The minor child complains of Mother sleeping in excess and causing her to miss school and other matters. Sometimes, Mother is unable to be awakened.

L. Mother has returned home "very drunk" from being out with other people.

M. Mother has anger issues and uses profanity towards the minor child on a routine basis.

N. Mother has told the minor child to lie to school officials about her tardiness or absences.

O. The minor child has come to Father for help, and desires to live with him; however, she is terrified of Mother. Without the Court's protection, the minor child is in reasonable fear that Mother may cause emotional or physical harm to her.

P. Subsequent to the child alarming Father of her concerns, Father has investigated the above and other matters.

Based on the foregoing facts and circumstances, the best interest of the minor child is to be placed in exclusive care, custody and control of Father. The minor child is without the proper care and supervision of Mother. Unless the Court enters an immediate Order granting Father temporary exclusive residential care and control of said child, the minor child is in danger of immediate and irreparable harm.

The following day, the trial court entered an interim emergency order directing that the child "be immediately placed in the exclusive care, custody and control of the Father . . . pending a hearing within fifteen (15) days . . . ." Mother waived her right to a hearing on emergency relief. Instead, the parties entered into an agreed order which included a temporary parenting plan that allowed father to maintain exclusive care, custody, and control of the child, but that also allowed mother to have co-parenting and telephone contact subject to the discretion of a medical professional. About one year later, however, father filed a motion for emergency injunctive relief to enjoin and restrain mother from interfering with his exclusive care, custody, and control of the child. On the same day, the trial court entered an interim emergency order suspending mother's visitation rights and once again directing the child to "be immediately placed in the exclusive care, custody and control of Father . . . ."

A trial was held on July 17, 2017. After the trial, the court entered an order establishing a permanent parenting plan that designated father as the primary residential parent. On September 15, 2017, mother, represented by new counsel, filed a motion to dismiss father's November 5, 2014 petition and all orders resulting therefrom for lack of subject matter jurisdiction. Mother argued that father's petition included allegations of dependency and neglect, which implicated the exclusive original jurisdiction of the juvenile court. On October 20, 2017, the trial court heard arguments from both sides on issue of subject matter jurisdiction. Ultimately, the court denied mother's motion to dismiss. Mother appealed.

## II.

The sole issue in this appeal is whether the trial court erred by denying her motion to dismiss for lack of subject matter jurisdiction.

## III.

Because "a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness." *Jackson v. Tenn. Dept. of Corr.*, 240 S.W.3d 241, 243 (Tenn. Ct. App. 2006) (quoting *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). In *Holley v. Holley*, this Court discussed the significance of subject matter jurisdiction:

> A court must have jurisdiction over the subject matter of the proceeding as well as over the parties. *State ex rel. Whitehead v. Thompson*, No. 01A01–9511–CH–00538, 1997 WL 749465 at *2 (Tenn. Ct. App. Dec. 5, 1997). The question of subject matter jurisdiction relates to a court's power to adjudicate a particular type of controversy. *Toms v.*

- 4 -

*Toms*, 98 S.W.3d 140, 143 (Tenn. 2003); ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000). . . . A court cannot enter a valid, enforceable order without subject matter jurisdiction. ***Brown v. Brown***, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); ***SunTrust Bank v. Johnson***, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000). Accordingly, when subject matter jurisdiction is questioned the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate its cases. ***Staats v. McKinnon***, 206 S.W.3d 541 [532] at 542 (Tenn. Ct. App. 2006). Subject matter jurisdiction may be raised at any time by the parties or by the appellate court sua sponte on appeal. ***County of Shelby v. City of Memphis***, 211 Tenn. 410, 365 S.W.2d 291 (Tenn. 1963).

420 S.W.3d 756, 759 (Tenn. Ct. App. 2013) (quoting ***Graham v. Graham***, No. E2008–00180–COA–R3–CV, 2009 WL 167071, at *6 (Tenn. Ct. App., filed Jan. 26, 2009)).

**IV.**

Because a party can raise the issue of subject matter jurisdiction at any time, it is inconsequential that mother waited over two and a half years to file her motion to dismiss. *See id.* Rather, the heart of this controversy is a dispute about the "nature of the case." *Id.* Father characterizes the case as a post-divorce child custody dispute; mother, on the other hand, characterizes the case as a dependency and neglect action. That distinction is important in light of the following statutes.

In Tennessee, both circuit courts and chancery courts are statutorily authorized to grant divorces and to make child custody determinations in connection with divorce proceedings. Tenn. Code Ann. § 16-10-108 (2009); Tenn. Code Ann. § 36-6-101(a)(1) (2017). Significantly, Tenn. Code Ann. § 36-6-101(a)(1) provides that a final decree of divorce "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require." *Id.*; *see also* Tenn. Code Ann. § 36-6-217 (providing for "exclusive, continuing jurisdiction" over child custody determinations). For example, if there has been "a material change in circumstances," a parent may file a petition to modify a court-ordered permanent parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). In addition, a parent may petition the court for an emergency, temporary modification of the parenting plan; if "the court finds that the child will be subject to a likelihood of substantial harm absent the temporary modification," the court can modify the residential schedule before a final hearing on the matter. Tenn. Code Ann. § 36-6-405(b) (2017). If the court enters such an order ex parte, "the respondent parent shall be entitled to an expedited hearing within fifteen (15) days of the

entry of the temporary modification order." *Id.*; *see also* Tenn. R. Civ. P. 65.07 ("The provisions of this Rule shall be subject to any contrary statutory provisions governing restraining orders or injunctions. In domestic relations cases, restraining orders or injunctions may be issued upon such terms and conditions and remain in force for such time as shall seem just and proper to the judge to whom application therefor is made[.]").

Nevertheless, the subject matter jurisdiction of circuit and chancery courts over divorce proceedings and subsequent child custody matters must be considered in conjunction with the jurisdiction allocated to juvenile courts. *See* Tenn. Code Ann. § 36-6-101(c) ("Nothing in this chapter shall be construed to alter, modify or restrict the exclusive jurisdiction of the juvenile court pursuant to § 37-1-103."); Tenn. Code Ann. § 36-6-411(a) ("Nothing in this part shall be construed to alter, modify or restrict the exclusive jurisdiction of the juvenile court pursuant to § 37-1-103."). The General Assembly has granted juvenile courts "exclusive original jurisdiction" over "[p]roceedings in which a child is alleged to be delinquent, unruly or dependent and neglected . . . ." Tenn. Code Ann. § 37-1-103(a)(1) (2014). Once a juvenile court acquires exclusive jurisdiction over a case,

> such jurisdiction shall continue until the case has been dismissed, or until the custody determination is transferred to another juvenile, circuit, chancery or general sessions court exercising domestic relations jurisdiction, or until a petition for adoption is filed . . . . This subsection (c) does not establish concurrent jurisdiction for any other court to hear juvenile cases, but permits courts exercising domestic relations jurisdiction to make custody determinations in accordance with this part.

Tenn. Code Ann. § 37-1-103(c).

At first blush, the aforementioned statutes appear to be in tension with one another; one statute gives juvenile courts "exclusive original jurisdiction" over dependency and neglect actions and other statutes authorize circuit courts and chancery courts to grant divorces and to exercise jurisdiction over subsequent child custody determinations "as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1); *see also* Tenn. Code Ann. § 36-6-217 (providing for "exclusive, continuing jurisdiction" over child custody determinations). Yet, the statutes purport to be congruent and not contradictory. *See* Tenn. Code Ann. §§ 36-6-101(c), -411(a); Tenn. Code Ann. § 37-1-103(c). In attempt to effectuate each statutory provision, our courts have consistently held to the following interpretation:

> the Chancery Court [and circuit court] never loses jurisdiction of the question of custody, that is, the subject matter as part of

a divorce proceeding, but the right and power to exercise that jurisdiction upon the person of the minor may be suspended temporarily or permanently either prior to or after the inception of the divorce case by reason of the exercise by the Juvenile Court of the special, exclusive jurisdiction conferred on it to determine whether the minor is 'dependent' or 'delinquent', as defined by the Statute and hence necessarily to determine custody.

*Kidd v. State ex rel. Moore*, 338 S.W.2d 621, 624 (Tenn. 1960) (quoting *Marmino v. Marmino*, 238 S.W.2d 105, 108 (Tenn. Ct. App. 1950)); *see also State of Tenn. Dept. of Human Servs. v. Gouvitsa*, 735 S.W.2d 452, 456 (Tenn. Ct. App. 1987) ("This issue was decided in Tennessee in [*Marmino*] and subsequently has been followed by all appellate courts of this state.").

In most cases, this jurisdictional quandary arises after a parent has filed a petition for dependency and neglect in the juvenile court. *E.g.*, *Branch v. Thompson*, No. M1998-00511-COA-R3-CV, 2000 WL 898759, at *1 (Tenn. Ct. App., filed July 7, 2000); *Hicks v. Hicks*, No. 01A01-9309-CH-00417, 1994 WL 108896, at *1 (Tenn. Ct. App., filed Mar. 30, 1994); *George v. George*, No. 02A01-9711-CH-00279, 1999 WL 252710, at *1 (Tenn. Ct. App., filed Apr. 28, 1999); *Gouvitsa*, 735 S.W.2d at 453; *Marmino*, 238 S.W.2d at 107. In those cases, we held that the circuit or chancery court lacked subject matter jurisdiction because the juvenile court's exclusive original jurisdiction attached upon the filing of a dependency and neglect petition in the juvenile court. *Branch* 2000 WL 898759, at *4; *Hicks*, 1994 WL 108896, at *2; *George*, 1999 WL 252710, at *4; *Gouvitsa*, 735 S.W.2d at 457; *Marmino*, 238 S.W.2d at 108-09. In contrast, we have held that a juvenile court's exclusive original jurisdiction *does not attach* when a juvenile court *dismisses* a petition alleging dependency and neglect. *Farley v. Farley*, No. W2000-01987-COA-R9-CV, 2001 WL 846075, at *3 (Tenn. Ct. App. July 20, 2001); *P.E.K. v. J.M. & C.Y.M.*, No. M2000-02737-COA-R10-CV, 2001 WL 356673, at *5 (Tenn. Ct. App., filed Apr. 11, 2001)).

On a few occasions we have held that a juvenile court's exclusive original jurisdiction attaches even when the petition filed in the juvenile court does not expressly include the words "dependency and neglect" – so long as the "substance" of the petition contains allegations of dependency and neglect. *E.g.*, *J.W.G. v. T.L.H.G.*, No. M2002-02656-COA-R3JV, 2003 WL 22794537, at *4 (Tenn. Ct. App., filed Nov. 25, 2003); *Fletcher v. Fletcher*, No. E2001-01223-COA-R3JV, 2002 WL 459012, at *3 (Tenn. Ct. App., filed Mar. 26, 2002); *State o/b/o Whitehead v. Mattie*, No. 01A01-9511-CH-00538, 1997 WL 749465, at *1 n.1 (Tenn. Ct. App., filed Dec. 5, 1997).

This case is different from the cases cited above because neither party has filed a petition alleging dependency and neglect *in the juvenile court*. Instead, mother argues

that the juvenile court's exclusive original jurisdiction attached when father filed his petition to modify the parenting plan *in the circuit court*. We have identified at least three post-divorce cases in which other parents have made the same argument. We will briefly discuss each of those cases.

In *Munday v. Munday*, No. E1999-02605-COA-R3-CV, 2000 WL 1154500 (Tenn. Ct. App., filed Aug. 15, 2000), the parties were granted a divorce in chancery court. Several years later, father filed a petition in the chancery court to modify the permanent parenting plan based on the following allegations:

> [Mother's] mental and emotional status has changed so as to render her disabled from employment and from managing the emotional, physical and financial burdens associated with the responsibility of being a primary residential custodian of minor children. [Mother's] emotional or psychological disability results in a significant degree of lethargy which, in turn, causes the minor children to be called upon to maintain the home and care for the mother, essentially reversing the roles of mother and children. Also, [Mother] has separated from current husband and, upon information and belief, [Father] alleges that during the period of separation from her current husband [Mother] has exposed the minor children to inappropriate influences in her household.

*Id.* at *1. Mother filed a motion to dismiss for lack of subject matter jurisdiction, arguing that father's petition "raises issues of dependency and neglect, which . . . placed Father's petition within the exclusive jurisdiction of the juvenile court." *Id.* The trial court denied mother's motion. *Id.* This Court affirmed:

> We find [mother's] argument wholly without merit. Although Mother is correct in asserting that, pursuant to T.C.A. § 37-1-103(a)(1), the juvenile court has exclusive jurisdiction over proceedings in which a party seeks to have a child declared dependent and neglected, Mother mischaracterizes the nature of the instant proceeding. This is not a proceeding to have a child declared dependent and neglected; this is a post-divorce proceeding seeking a change in a custodial arrangement. As such, it was properly brought in chancery court. Therefore, the chancery court, the site of the original divorce proceedings, properly exercised jurisdiction over Father's petition.

*Id.* at *7.

We confronted a similar situation in ***Holley v. Holley***, 420 S.W.3d 756 (Tenn. Ct. App. 2013). In ***Holley***, the parties were divorced in circuit court. ***Id.*** at 757. Two years later, the father filed a petition in the circuit court seeking a change of custody based on allegations that the mother failed to follow the recommendations of medical experts who diagnosed the parties' children with various intellectual and emotional disorders. ***Id.*** at 757-58. Specifically, father's petition alleged that "the minor children will suffer immediate and irreparable injury if the recommendations of the experts are ignored and the minor children's educational, psychological and behavioral needs continue to be ignored by Mother." ***Id.*** at 758.

The mother in ***Holley*** filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the substance of father's petition alleged dependency and neglect, which implicated the juvenile court's exclusive original jurisdiction. ***Id.*** at 759. The trial court granted mother's motion to dismiss. ***Id.*** According to the trial court, the substance of father's petition alleged that the parties' children were dependent and neglected as defined by Tenn. Code Ann. § 37-1-102(b)(13)(D), which includes children "[w]hose parent . . . neglects or refuses to provide necessary medical, surgical, institutional, or hospital care for such child."[3] ***Id.*** Accordingly, the court concluded that the petition triggered the juvenile court's exclusive original jurisdiction. ***Id.***

On appeal, this Court accepted the premise that "[a] petition [filed in circuit court] alleging dependency and neglect, either expressly or in substance, implicates the exclusive original jurisdiction of the juvenile court." ***Id.*** at 760 (citing ***J.W.G.***, 2003 WL 22794537, at *4). Nevertheless, we reversed the decision of the trial court because

> [i]n spite of the tone of urgency and severe language, we believe the allegations in the Petition are not tantamount to allegations of dependency and neglect under the statute. The allegations are more in the nature of a disagreement over the long-term manner of addressing the Children's psychological, behavioral, and educational issues. . . . We find nothing in the statutes to support a determination that our General Assembly intended by enacting Tenn. Code Ann. § 37-1-103(a)(1) to strip jurisdiction from a court that has handled a divorce and post-divorce matters solely because the parents disagree on how to address their child's medical needs. Such an intention by our General Assembly would have resulted in a wholesale shifting of custody cases to the juvenile court . . .

---

[3] In ***Holley***, we emphasized that "[t]he Trial Court invoked this definition of dependency and neglect in its oral ruling, and, although the law contains several other definitions, this is the most relevant for the instant appeal." 420 S.W.3d at 760 n. 1.

*Id.*  We therefore reversed the trial court's decision that it lacked subject matter jurisdiction over the case.

We addressed this issue most recently in ***Tavino v. Tavino***, No. E2013-02587-COA-R3CV, 2014 WL 5430014 (Tenn. Ct. App., filed Oct. 27, 2014).  In ***Tavino***, the parties were divorced in chancery court.  *Id.* at \*2.  The father filed a petition in chancery court for modification of the permanent parenting plan and termination of father's child support obligation.  *Id.*  The trial court entered an order that modified the parenting plan by designating father the primary residential parent and terminating his wage assignment.  *Id.*  The court also ordered mother to pay father child support.  *Id.* at \*3.  Several months later, mother filed a Tenn. R. Civ. P. 60.02 motion to alter or amend the judgment.  *Id.* at \*5.  Mother's motion included an allegation that "[t]he minor child of these parties remains in severe danger, from himself and others, and the Father has refused to arrange critical evaluation of his mental condition or arrange other help for this child."  *Id.*  The trial court determined that it lacked subject matter jurisdiction because mother's petition "constituted a dependency and neglect claim rather than a petition to modify a permanent parenting plan."  *Id.*  This Court affirmed.  *Id.* at \*12.  We agreed with the trial court's conclusion "that Mother's allegations against Father's parenting of the Child constituted a dependency and neglect claim over which the juvenile court would have sole jurisdiction."  *Id.* at \*11.

Returning to the present case, mother argues that the trial court lacked subject matter jurisdiction because father's November 5, 2014 petition included allegations that implicated the exclusive original jurisdiction of the juvenile court.  First, mother claims that virtually all of the allegations in father's petition are "tantamount to alleging dependency and neglect" as defined in sections (B), (C), (F), and (G) of Tenn. Code Ann. § 37-1-102(b)(13) (Supp. 2018).[4]  Second, mother claims that paragraphs (E) and (G) of father's petition essentially allege that the child is "unruly" and "delinquent."[5]  Third, mother raises general concerns about father's use of a petition for emergency relief to circumvent the jurisdiction of the juvenile court, which offers different procedural safeguards for both children and parents.

---

[4] Specifically, mother's brief asserts that:  paragraphs (B), (D), (E), (G), (H), (J), (K), and (L) of father's petition fit within section (C) of the statutory definition; paragraphs (A), (B), (I), (M), and (N) of father's petition fit within section (F); paragraph (O) fits within section (G); and that paragraph (B) fits within section (B).  Mother appears to concede that paragraph (F) of father's petition alleges facts sufficiently similar to ***Holley***, which this Court held were *not* tantamount to alleging dependency and neglect as defined by section (D) of the statute.

[5] Mother did not raise this argument in her original motion to dismiss but did raise it on appeal.  Because a party never waives the right to raises issues relating subject matter jurisdiction, we will consider this argument in our de novo review.

We agree with mother that the substance of paragraphs (E) and (G) of father's petition alleged that the child was "unruly." The General Assembly defines an "unruly child" to include

> a child in need of treatment and rehabilitation who:
>
> (A) Habitually and without justification is truant from school while subject to compulsory school attendance under § 49-6-3007; . . . .

Tenn. Code Ann. § 37-1-102(b)(26).

Here, father's petition alleged that the child had "ten (10) unexcused absences to date"; by statute, a child may be deemed "habitually truant" after she has accumulated three days of unexcused absences. Tenn. Code Ann. § 49-6-3007(h)(3) (Supp. 2018). Furthermore, by stating that the child's ten absences were "unexcused," the petition sufficiently alleged that those absences were "without justification."[6] Tenn. Code Ann. § 37-1-102(b)(26)(A). Finally, father's allegation that "[the child] is without the necessary help to end the downward spiral" constitutes an allegation that the child is "in need of treatment and rehabilitation." *Id.* We therefore hold that the allegations in paragraphs (E) and (G) of father's petition were sufficient to trigger the exclusive original jurisdiction of the juvenile court. Accordingly, the trial court lacked subject matter jurisdiction and all actions taken by the court are void for lack of subject matter jurisdiction. We need not decide whether the petition contained additional statements that, in substance, alleged the child to be delinquent or dependent and neglected.

---

[6] At the hearing below, the trial court observed that a child's absence could theoretically be marked "unexcused" by the child's school despite the existence of a justifiable excuse, e.g., if a child had a doctor's appointment but failed to present a doctor's note. We agree with the trial court that under such circumstances the child could not justly be deemed "unruly" under the statute. This case, however, does not require us to decide the ultimate issue of whether the child was, in fact, unruly; instead, we are merely concerned with the threshold jurisdictional issue of whether the substance of father's petition *alleged* that the child was unruly.

## V.

The judgment of the trial court denying mother's motion to dismiss for lack of subject matter jurisdiction is hereby reversed. We vacate all orders of the trial court that resulted from father's November 5, 2014 petition, and we remand the case for further proceedings. Costs on appeal are taxed against the appellee, Lewis Alvin Minyard.

_____
CHARLES D. SUSANO, JR., JUDGE