FILED
03/15/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2021 Session

IN RE ABIGAIL J. J.[1]

**Appeal from the Chancery Court for Anderson County**
**No. 19-CH-1147     M. Nichole Cantrell, Chancellor**

———————————————————

**No. E2019-01832-COA-R3-CV**

———————————————————

This action involves the termination of a mother's parental rights by default judgment. The trial court found that clear and convincing evidence existed to establish four statutory grounds of termination and that termination was in the best interest of the child. We vacate the order of the trial court and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, JJ., joined.

Channing R. Miller and Lauren R. Biloski, Clinton, Tennessee, for the appellant, Jessica J.

N. David Roberts, Jr., Knoxville, Tennessee, for the appellees, James and Alicia W.

**OPINION**

**I.     BACKGROUND**

In May 2015, Abigail J. J. ("the Child") was born out of wedlock to Jessica J. ("Mother").[2] During the pregnancy, Mother moved into the home of her half-sister, Alicia W. ("Aunt"). Mother and the Child moved out briefly before Mother informed Aunt that she could no longer care for the Child. Aunt agreed to take the Child. Mother later returned

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

[2] The putative father did not appeal the termination of his parental rights.

and took the Child, believing that Aunt intended to obtain legal custody. Several of Mother's relatives, including Aunt and the Child's grandfather, Michael J. ("Grandfather"), all shared concerns for the Child's well-being. Grandfather ultimately left his job in Alabama to reside full time in Tennessee so he could care for the child.

On November 10, 2015, Grandfather petitioned the Anderson County Juvenile Court for custody of the Child, alleging that she was dependent and neglected. He was granted temporary legal custody. Mother's whereabouts were unknown at the time. She was not served and did not appear at the preliminary hearing. Mother eventually contacted Grandfather and was informed of the proceedings. Mother was present for a Juvenile Court hearing on March 21, 2016, and was served with the petition for custody. She executed a waiver of the preliminary hearing and for legal counsel. Mother passed a drug test and was awarded eight hours of unsupervised visitation with the Child per week. Between then and the June 20, 2016, adjudicatory hearing, Mother completed five or six of the eight visits that Grandfather arranged and paid approximately $600 in support.

Mother ceased her payments of support and no longer appeared for visitation after June 2016. She did not appear at the adjudicatory hearing on June 20, where the Juvenile Court adjudicated the Child as dependent and neglected and required supervision for any further visitation.

Aunt married James W. ("Uncle") (collectively the Petitioners") in January 2017. The two moved to Ohio but still assisted Grandfather. The Child, then two-years-old, lived back and forth between Grandfather's home in Tennessee and with the Petitioners in Ohio. The Petitioners eventually returned to East Tennessee in February 2018.

Meanwhile, Mother birthed another child, Brielle, in August 2018. The Tennessee Department of Children's Services ("DCS") petitioned for the removal of Brielle based upon Mother's drug use while pregnant. Brielle was placed with the Petitioners. On February 12, 2019, the Juvenile Court adjudicated Brielle as dependent and neglected "due to Mother's substance abuse while pregnant." The court also found that Brielle was a victim of severe child abuse. Mother did not appeal this finding. The Petitioners maintained physical custody of Brielle, who has never lived with Mother.

Grandfather, along with the Petitioners, then petitioned the Juvenile Court for a change in the Child's custody. Grandfather indicated that he simply wished to act as the Child's grandfather, not as a parent. A hearing was held on March 18, 2019, at which Mother was present. The court awarded the Petitioners legal custody and awarded Mother supervised visitation.

On April 24, 2019, the Petitioners filed a petition to terminate Mother's parental rights and to adopt the Child. On May 10, Mother was served in person at her workplace. On July 1, the Petitioners moved for a default judgment after more than 30 days passed

since service of process pursuant to Tennessee Rule of Civil Procedure 55.[3] The motion contained a notice of hearing for July 19.

Mother did not answer or otherwise plead in opposition to the petition. Mother contacted opposing counsel, whose office advised her that he could not offer assistance as the opposing party. Mother appeared at the hearing, where she was advised by the trial court that a default judgment was warranted based upon her failure to respond. The court instructed Mother to fill out the Uniform Civil Affidavit of Indigency to request counsel. Opposing counsel indicated on the record that he would not oppose setting aside the entry of default judgment, should counsel, once appointed, make an appropriate motion.

After the hearing, Mother filed the Affidavit of Indigency, attesting that her income was $30,000 per year, after the deduction of federal income and social security taxes. The same day, the trial court signed the "Determination of Nonindigency" portion of the affidavit, finding that Mother was not indigent based upon her income. By order entered August 6, the trial court entered judgment by default against Mother and scheduled an evidentiary hearing on the petition for August 30. The trial court did not appoint a guardian ad litem "because the proceeding [was] not contested."

The case proceeded to trial, as scheduled. Mother appeared without counsel and did not request a continuance or more time to retain counsel. At that time, she still had not responded to the petition or challenged the entry of default judgment. She was not permitted to testify or offer evidence to rebut the claims. Following the examination of three witnesses, the following colloquy occurred between Mother and the trial court:

> [Mother]: Do I get a chance to say anything?
>
> Court: Not at this hearing. The Motion for Default that was previously entered against you means that they can proceed basically Ex Parte, meaning . . . you're not even required to be here but the previous Order of Default against you means they can proceed forward without your participation, without any notice to you. So –
>
> [Mother]: [Interrupting.] So the fact that they just set up here and lied means nothing?
>
> Court: Basically what I'm saying is there's a previous Order of the Court terminating your rights by default.

---

[3] "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered[.]"

- 3 -

[Mother]: So that's . . . that's final? That's it?

Court: The Ruling I'm getting ready to make based on the grounds and the evidence that they just provided and these exhibits is going to be the final Ruling.

[Mother]: This sucks.

[Counsel]: And I just want to remind the Court for the record, you were ready to proceed with this hearing last time and I agreed, really just in fairness to her to re-set this for a month to allow her to talk to a Lawyer and if she found a Lawyer that she wanted to retain . . . and set it aside and so we gave her an opportunity to do that and so she's here without Counsel today and I –

[Mother]: [Interrupting.]. And unfortunately I wasn't informed until [two] weeks in that I didn't get granted a court appointed one and all the Attorneys I talked to wanted [$10,000]. How do you come up with [$10,000] in [two] weeks? How do you do that?

Court: Okay.

[Counsel]: And so I talked to one of the . . . one of the Attorneys that called me was Ms. Whitfield and Ms. Whitfield was going to try to work with her and I sent all of the exhibits. Nancy in my office scanned and emailed all of the exhibits to Ms. Whitfield. And I think that Ms. Whitfield was interested in taking the case but for whatever reason was not retained.

Court: Okay. So I –

[Mother]: [Interrupting.] Just for the record so I don't get a bad name, I have worked my butt off for the last year and a half to build . . . to rebuild my life and better myself for my kids. I have completed every single thing that was asked of me. I have been clean from all of my opiates and substances for over a year and a half now.

* * *

Court: Alright. [Counsel], do you have any questions you wish to ask [Mother] since she's present today?

[Counsel]: No[,] Your Honor.

- 4 -

Court:     Alright.  Is there anything else that you want me to know other than what you've already stated?

[Mother]:     I was told for [two years] of her life that I had no rights and no visitations whatsoever!  That's why I started to make sure that I had set visitation so custody got passed and I haven't missed one ever since!  I have pay stubs on my phone where child support is [withheld from my check] every time I get paid!

* * *

[Mother]:     They took out [$900] from my income tax, [$900] from the income tax the year before and [$78] gets [withheld] biweekly every time I get paid[, starting] about [three] months ago.

Court:     Okay.  So that would have started in May of 2019?

[Mother]:     I guess.

[Counsel]:     And it's my understanding that that is the State seeking reimbursement for Family's First and WIC benefits. . . . And that money goes to the State.

The trial court then made its final ruling, which was later memorialized by order entered September 16, 2019.  The trial court made extensive factual findings and conclusions of law and terminated Mother's parental rights based upon the following four statutory grounds: abandonment for failure to remit child support; the persistence of conditions which led to removal; a prior finding of severe abuse and neglect of the Child's sibling; and failure to manifest an ability and willingness to care for the Child and placing the Child in Mother's custody would pose a risk of substantial harm to the physical or psychological welfare of the Child.  The court further found that termination was in the best interest of the Child.  The court awarded the Petitioners' legal guardianship and ordered that they have the right to consent to the Child's adoption, pending the final adoption hearing.  The court directed entry of this order as a final order pursuant to Rule 54.02.[4]

On September 20, 2019, attorney Biloski, representing Mother, filed a notice of appearance and moved to set aside the trial court's order pursuant to Rule 60.02 of the

_____

[4] "When more than one claim for relief is present in an action . . . the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

- 5 -

Tennessee Rules of Civil Procedure,[5] arguing that relief from the judgment was warranted when Mother appeared but was unable to afford an attorney and when no guardian ad litem was appointed to protect the best interest of the Child. Mother filed her notice of appeal on October 15, 2019. This court remanded the case for the trial court to resolve Mother's Rule 60 motion.

Upon remand, Mother testified by deposition that she was unsure how to respond to the termination petition. She recalled visiting opposing counsel's office to seek advice but claimed that she was told his office could not respond to her inquiries as the opposing counsel. She stated that she was unsure what to do next. However, she appeared at the appointed time once she received notice of the default hearing. She stated that she requested counsel at the hearing and that the court clerk advised her that she would be notified if eligible for court appointed counsel. She explained that she called the clerk's office multiple times but was advised that they could not provide any information over the telephone because it was a sealed case. She claimed that Aunt advised her that her request had been denied and that she later confirmed this fact with the clerk when she appeared for a different court date. She then began contacting attorneys.

Mother admitted that she made approximately $30,000 per year but explained that she did not have the funds to pay the retainer fee for an attorney. She stated that her Google search for family law attorneys yielded 50 different attorneys. She called "every single one" but could not afford the consultation fees discussed. She finally met with one attorney, who requested a $2,500 retainer fee, which she could not afford.[6] Relative to the hearing, Mother conceded that of the three witnesses, only her sister told an untruth related to a conversation between them.

The trial court heard and denied Mother's motion to set aside on February 14, 2020, at which Mother argued that her prior dealings with civil and criminal court resulted in the appointment of an attorney. She continued that she appeared at the default hearing and requested an attorney but was not provided with one. Thereafter, Mother attempted to secure her own attorney but was unable to afford the required retainer fee.

---

[5] "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment."

[6] She claimed that she was only able to hire her present counsel once she received financial assistance from a family member.

Mother made an offer of proof in which she reiterated her arguments and explained that her funds were depleted by her efforts to complete the DCS permanency plan requirements for Brielle. She claimed that she completed a number of requirements and had improved her life in an attempt to also reunite with the Child. This appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised by Mother to the following dispositive issues:

A.    Whether the trial court erred in its denial of Rule 60 relief from the default judgment.

B.    Whether the trial court erred in terminating Mother's parental rights by default without the appointment of counsel.

C.    Whether the trial court erred in terminating Mother's parental rights by default without the appointment of a guardian ad litem to protect the Child's interest.

## III.    STANDARD OF REVIEW

"A Rule 60.02 motion for relief from a judgment is within the sound discretion of the trial court and the court's ruling on a Rule 60.02 motion may not be reversed on appeal unless it is determined that the court abused its discretion." *Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 92 (Tenn. Ct. App. 2000) (citations omitted); *see also Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015). Under this standard, we are not permitted to "substitute [our] judgment for that of the trial court[,]" and the trial court's ruling will be upheld unless it affirmatively appears that the "decision was against logic or reasoning, and caused an injustice or injury to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Battleson v. Battleson*, 223 S.W.3d 278, 283 (Tenn. Ct. App. 2006).

## IV.    DISCUSSION

### A.

Rule 55.02 of the Tennessee Rules of Civil Procedure provides that "[f]or good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Rule 60.02 specifies the grounds upon which a party may be granted relief as follows:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

In determining whether a default judgment should be vacated, Tennessee courts also must consider, in addition to the justifications provided under Rule 60.02, the following three criteria: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985) (quoting *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983)). The Tennessee Supreme Court has admonished trial courts to construe Rule 60.02 "with liberality to afford relief from a default judgment." *Id.*

In the case before us, Mother's motion to set aside the default judgment refers generally to Tenn. R. Civ. P. 55.02 and requests relief "for good cause shown" but does not specify the subpart under Tenn. R. Civ. P. 60.02 upon which relief is sought. Specifically, Mother argued that she was unsure how to respond to the petition without an attorney but that she appeared at the hearing, believing she would be appointed an attorney. Once an attorney was not appointed, she attempted to secure one but was unsuccessful. She further argued that the trial court's failure to appoint a guardian ad litem to protect the Child's best interest was "reversible error." In sum, Mother pled (1) excusable neglect for her failure to respond to the petition and (2) that the judgment was void based upon the failure to appoint a guardian. *See generally Holley v. Holley*, 420 S.W.3d 756, (Tenn. Ct. App. May 31, 2013) (providing that reviewing courts "ultimately must look to the substance of what has been alleged," beyond the pleadings, to properly decide what characterization an action takes).

The court generally rejected Mother's claims, holding that it was not responsible for trying Mother's case and that the hearing properly proceeded as uncontested due to Mother's failure to issue a responsive pleading, thereby obviating the need for the appointment of a guardian. This court has offered the following guidance for trial courts to follow when a party appears unrepresented:

Parties who decide to represent themselves are entitled to fair and equal

treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow*, 130 S.W.3d 59, 62–63 (Tenn. Ct. App. 2003) (citations omitted).

Here, Mother's failure to file a responsive pleading was excusable based upon the following facts presented here: she appeared at the hearings, she attempted to secure appointed counsel, and she had prior dealings with the court system that did not require a responsive pleading. We recognize that pro se litigants should not be permitted to shift the burden of the litigation to the court or their adversaries. This court has also repeatedly stated that parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)). At the very least, Mother should have been permitted additional time in which to issue a pro se responsive pleading and motion to set aside once her attempt to secure counsel was unsuccessful.

The record also overwhelmingly establishes that the default was not willful. The

Petitioners allege that relief should still not be granted because Mother cannot establish a meritorious defense to the statutory ground of termination based upon a prior finding of severe abuse. The Petitioners are correct that the existence of one statutory basis for termination of parental rights will support the trial court's decision to terminate. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005). However, "a court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); Tenn. Code Ann. § 36-1-113(c). Mother informed the court of the progress she made to improve herself in her attempt to reunite with the Child and provided supporting documentation in support of her assertion. The level of prejudice that may occur to the non-defaulting party is minimal in comparison to the insurmountable injustice that occurred as a result of the termination here.

Relative to the failure to appoint a guardian ad litem, the court explained that the action was characterized as uncontested because no responsive pleading was filed. This action was "contested" at every stage of the proceeding through Mother's presence, her verbal objection to the termination of her rights, and her attempt to seek legal counsel. We hold that the failure to appoint a guardian ad litem to protect the Child's interest also resulted in a void judgment under the circumstances presented here. *See* Tenn. Sup. Ct. R. 13(d)(2)(D) (providing that the court shall appoint a guardian ad litem in termination proceedings, unless the termination is uncontested). *See generally Turner v. Turner*, 473 S.W.3d 257, 270-71 (Tenn. 2015) (holding that a judgment will be held void only when the infirmity is apparent from the record or the proceedings); *In re Aliyah*, 604 S.W.3d 417, 420 (Tenn. Ct. App. 2019) (vacating the termination of parental rights when the appointed guardian ad litem was not present at the hearing to represent the child).

With all of the above considerations in mind, we hold that the trial court's refusal to set aside the default judgment was against logic and that the court's judgment in this action must be vacated as a result of the injustice caused. Any remaining issues are pretermitted by this court's decision. Upon remand, Mother may request the appointment of counsel based upon her current income.

## V.     CONCLUSION

The judgment of the trial court is vacated. The case is remanded for further proceedings. Costs of the appeal are taxed to the appellees, James and Alicia W.

_____
JOHN W. McCLARTY, JUDGE