IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2025 Session

**IN RE MARKUS E.**

**Appeal from the Circuit Court for Davidson County**
**No. 15D2062      Phillip R. Robinson, Judge**

_____

**No. M2024-00797-COA-R9-JV**
_____

In this dependency and neglect action, the juvenile court adjudicated the child dependent and neglected in 2015 and found that the child was the victim of severe child abuse perpetrated by one or both of his parents. The parents appealed that decision to the circuit court. Because a termination petition was filed shortly thereafter, the circuit court stayed the dependency and neglect appeal pending the outcome of the termination action. Both parents' parental rights were terminated pursuant to the severe child abuse ground in Tenn. Code Ann. § 36-1-113(g)(4), but the Tennessee Supreme Court reversed that determination. The dependency and neglect appeal then resumed in the circuit court, and the Department of Children's Services filed an amended dependency and neglect petition alleging new facts. The mother filed a motion to dismiss the amended petition on the basis that the court lacked jurisdiction to consider the petition, and she filed a motion to dismiss the case, arguing that the Supreme Court's decision in the termination case barred all claims in the dependency and neglect case under the doctrine of res judicata. The circuit court denied both motions but permitted the parties to pursue an interlocutory appeal. We reverse the circuit court's determination that the severe child abuse claim was not precluded, but we affirm the court in all other respects.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Nicholas Perenich, Jr., Nashville, Tennessee, for the appellant, Mark E., Sr.

Lorraine Wade, Smyrna, Tennessee, for the appellant, Nakesha M.

Jonathan Skrmetti, Attorney General and Reporter, J. Matthew Rice, Solicitor General, Jordan K. Crews, Senior Assistant Attorney General, and Kathryn A. Ahillen, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

David R. Grimmett, Franklin, Tennessee, guardian ad litem.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

The Tennessee Department of Children's Services ("DCS" or "the Department") initiated this dependency and neglect action in 2015 in Davidson County Juvenile Court after receiving a referral that seven-month-old Markus E., the child of Nakesha M. ("Mother") and Mark E. ("Father"), had suffered unexplained rib fractures and subdural hematomas. In the dependency and neglect petition, DCS alleged that the child was abused, severely abused, and dependent and neglected "due to severe physical abuse." During the child's infancy, he had four regular caregivers: Mother; Father; the maternal grandmother, Nadine M. ("Grandmother"); and a daycare worker, Carlithia Pryor ("Daycare Provider"). Thus, in the petition, DCS alleged that Mother, Father, Grandmother, or Daycare Provider perpetrated the abuse, severe abuse, and dependency and neglect.

On June 1, 2015, DCS voluntarily dismissed the petition as to Daycare Provider. The matter then proceeded to trial against the remaining three defendants on July 28, 2015. After hearing the matter, the juvenile court entered an order adjudicating the child dependent and neglected and finding that he was the victim of severe child abuse perpetrated by Mother and Father. The juvenile court made the following pertinent findings of fact:

> Infants do not simply spontaneously fracture twenty-two ribs. The reality is that someone abused Markus on more than one occasion. None of the four caregiving individuals provided testimony regarding any trauma to Markus that could possibly have resulted in these injuries. Instead, and incredibly, all of the remaining respondents in this case testified to hearing what they described as a crackling sound coming from Markus's rib area while he was otherwise acting and behaving normally. This description, to the court, appears both preposterous and contrived. It appears to the court to be an attempt to cover up what truly was the cause of these multiple severe injuries.
> . . .
> Clearly, in this case Markus is a dependent and neglected as well as abused child given that his injuries have been diagnosed as child abuse and frankly could only occur while in the possession of a parent or caregiver. . . .

- 2 -

. . .

It is true that factually, this court is unable to precisely pinpoint when these injuries occurred or establish beyond a reasonable doubt precisely who perpetrated the injuries upon then 7 month old Markus. However, that is not required. The circumstantial evidence in this case is highly telling. Markus suffered a total of twenty-two rib fractures during at least two occasions. These fractures were diagnosed as child abuse. In addition, he suffered from subdural hematomas which are concerning for inflicted trauma. . . .

. . .

Markus [E.] is found by clear and convincing evidence to be a dependent, neglected, abused and severely abused child pursuant to T.C.A. 37-1-102. The perpetrator of the severe abuse is either his mother or his father and the other parent[] willfully failed to protect Markus. Regardless of who precisely perpetrated the trauma upon Markus, his parents failed to protect him from ongoing trauma and instead developed a charade to conceal the true cause of his injuries.

(Footnote omitted). Because the court believed that Grandmother did not fall within the statutory definition of a parent or custodian, the court dismissed the charge of severe abuse as to her.

Both Mother and Father sought a de novo appeal of the juvenile court's ruling in the Circuit Court for Davidson County. The Department also appealed, challenging the juvenile court's decision to dismiss the severe abuse charge against Grandmother. On August 5, 2016, while the appeal of the dependency and neglect order was still pending in the circuit court, DCS filed a petition in the juvenile court seeking to terminate both parents' parental rights. The circuit court stayed the dependency and neglect appeal pending the outcome of the termination action.

After a trial on the termination petition, the juvenile court entered an order terminating both parents' parental rights pursuant to the severe child abuse ground in Tenn. Code Ann. § 36-1-113(g)(4).[1] That termination ground allows a court to terminate a parent's rights if he or she "has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of the court or is found by the court hearing the petition to terminate parental rights . . . to have committed severe child abuse against any child." Tenn. Code Ann. § 36-1-113(g)(4) (2016). In turn, Tenn. Code Ann. § 37-1-102(b)(27)(A)(i) (2016) defined "severe child abuse" as (1) "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause

---

[1] The juvenile court also terminated Mother's parental rights pursuant to the ground of substantial noncompliance with the permanency plan. Our Supreme Court reversed that termination ground. *In re Markus E.*, 671 S.W.3d 437, 472-74 (Tenn. 2023).

serious bodily injury or death," and (2) "the knowing use of force on a child that is likely to cause serious bodily injury or death."

A panel of this Court affirmed the juvenile court's termination decision, but the Tennessee Supreme Court reversed. In reaching its conclusion, the Supreme Court focused on the second definition of severe child abuse in Tenn. Code Ann. § 37-1-102(b)(27)(A)(i)—whether the parents had knowingly failed to protect the child from abuse. *In re Markus E.*, 671 S.W.3d 437, 466-68 (Tenn. 2023) ("*In re Markus I*"). After reviewing the record, the Court concluded as follows:

> Here, the trial court made no finding on which parent inflicted Markus's rib fractures, or if both parents did. In this posture, the finding of severe child abuse may be affirmed only if the proof shows that both parents' failure to protect Markus was "knowing," i.e., both were aware of facts, circumstances, or information that would alert a reasonable parent to take affirmative action to protect the child, and yet they failed to act. We find no such proof in this record.

*Id.* at 471. Thus, the Supreme Court held that the record did not clearly and convincingly establish the termination ground of severe child abuse. *Id.* at 472. The Court noted, however, that its holding did not preclude a finding of dependency and neglect in this case because "dependency and neglect proceedings focus on the status of the child[] and do not require a specific 'knowing' state of mind on the part of the parent or custodian." *Id.* at 475.

Proceedings in the dependency and neglect de novo appeal then resumed in the circuit court. The original petition filed in 2015 alleged two claims: (1) that Markus was dependent and neglected under multiple definitions of that term in Tenn. Code Ann. § 37-1-102(b)(13), including subsection (b)(13)(G), which defines a dependent and neglected child as one who has suffered abuse or neglect; and (2) that both parents committed severe child abuse under Tenn. Code Ann. § 37-1-102(b)(27).[2] In September 2023, DCS filed an amended petition alleging new facts related to the child's current circumstances but adding no new claims. Mother moved to dismiss the amended petition, arguing that the circuit court lacked jurisdiction to consider it. According to Mother, an amended petition alleging new facts must be filed in the juvenile court. The circuit court denied the motion, finding that the court "must consider all of the child's current circumstances which may have

---

[2] When DCS filed the original petition in 2015, the definition of "dependent and neglected child" was located in Tenn. Code Ann. § 37-1-102(b)(12), and the definition of "severe child abuse" was located in Tenn. Code Ann. § 37-1-102(b)(21). Thus, the original petition includes citations to subsections (b)(12) and (b)(21). By the time DCS filed the amended petition in September 2023, the statute had been amended, and these definitions had been moved to subsections (b)(13) and (b)(27), respectively. *See* Tenn. Code Ann. § 37-1-102 (2023). Because no substantive amendments were made to these provisions, we will cite to the subsections in effect when DCS filed the amended petition.

changed since" the juvenile court adjudicated the child dependent and neglected in September 2015.

Mother also filed a "Motion to Dismiss or to Declare Certain Issues Res Judicata." She argued that the Supreme Court's decision in *In re Markus I* precluded relitigation of both claims in the dependency and neglect de novo appeal under the doctrine of res judicata. The Department opposed the motion and, at a hearing on August 21, 2023, the circuit court agreed with DCS, ruling that res judicata did not apply to either claim. After reevaluating its position, DCS filed a motion to alter or amend the res judicata ruling, arguing that the *In re Markus I* decision barred the severe child abuse claim but not the dependency and neglect claim. The circuit court entered an order denying the motion based on its determination that the *In re Markus I* decision had no preclusive effect on either claim. The court, however, granted the parties permission to pursue an interlocutory appeal from its ruling on the preclusion issue and from its ruling that it had jurisdiction to hear DCS's amended petition.

The circuit court certified the following three issues for our review:

1. Does a Circuit Court which sits as the appellate court for Dependency and Neglect Orders appealed from Juvenile Court have the jurisdiction to have a trial on the merits on an Amended Petition for Dependency and Neglect that was never originally filed or heard in Juvenile Court?
2. Can a trial court apply the doctrine of res judicata, collateral estoppel, judicial estoppel, or claim preclusion in a pending Dependency and Neglect proceeding where a final order exists in a Termination of Parental Rights Proceeding[] where the parties and privies are the same in both proceedings[.] And if so, does the Supreme Court Opinion in [*In re Markus I*] have a preclusive effect on the pending Dependency and Neglect proceedings at all?
3. Can the court apply the principles set out in T.C.A. 36-1-113(g)(4) in cases where the Termination of Parental Rights was heard prior to the Petition for Dependency and Neglect?

STANDARD OF REVIEW

We apply the same standard of review to the issues in an interlocutory appeal as we would apply to those issues in an appeal as of right. *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005). All of the issues presented in this interlocutory appeal involve questions of law, which we review de novo with no presumption of correctness given to the trial court's decision. *Kershaw v. Levy*, 583 S.W.3d 544, 547-48 (Tenn. 2019) (stating that a court's ruling on judicial estoppel presents a question of law); *In re Taylor B.W.*, 397 S.W.3d 105, 111 (Tenn. 2013) (stating that a court's determination on the applicability of res judicata or collateral estoppel presents a question of law); *Chapman v. DaVita, Inc.*, 380 S.W.3d

- 5 -

710, 712-13 (Tenn. 2012) (stating that the existence of subject matter jurisdiction presents a question of law).

ANALYSIS

I. Whether the circuit court has jurisdiction to consider DCS's amended petition

The first issue presented for our consideration concerns subject matter jurisdiction. Subject matter jurisdiction involves a court's authority to adjudicate a particular controversy. *Chapman*, 380 S.W.3d at 712. "Subject matter jurisdiction depends on the nature of the cause of action and the relief sought, and can only be conferred on a court by the constitution or a legislative act." *Id.* (citations omitted). In this case, Mother and Father contend that the circuit court lacks subject matter jurisdiction to consider DCS's amended dependency and neglect petition because it was not first considered by the juvenile court.

Resolution of this issue requires us to interpret two statutory provisions: Tenn. Code Ann. §§ 37-1-103(a)(1) and 37-1-159(a). When interpreting a statute, our role "is to assign a statute the full effect of the legislative intent without restricting or expanding its intended scope." *Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016). We determine the legislature's intent by "look[ing] first and foremost to the text of the statute because the statutory language is of primary importance." *Flade v. City of Shelbyville*, 699 S.W.3d 272, 285 (Tenn. 2024). If a statute's language is "clear and unambiguous, we derive the legislative intent from the plain meaning of the statutory language and simply enforce the statute as written." *Id.* We construe statutes in a reasonable manner that "'avoids statutory conflict and provides for harmonious operation of the laws.'" *Frye v. Blue Ridge Neuroscience Ctr.*, 70 S.W.3d 710, 716 (Tenn. 2002) (quoting *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997)); *see also State v. Miller*, 575 S.W.3d 807, 810-11 (Tenn. 2019). Statutory construction presents a question of law that we review de novo without a presumption of correctness. *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020).

Tennessee Code Annotated section 37-1-103(a)(1)(C) states that juvenile courts have "exclusive original jurisdiction" to hear allegations that a child is dependent and neglected. This Court has previously interpreted this statute as meaning that "once a petition is filed in juvenile court to declare a child dependent and neglected, the juvenile court has exclusive jurisdiction regarding custody of the child, and any subsequent order concerning custody entered by [a circuit court or chancery court] . . . is void." *George v. George*, No. 02A01-9711-CH-00279, 1999 WL 252710, at *4 (Tenn. Ct. App. Apr. 28, 1999) (citing *State of Tenn. Dep't of Human Servs. v. Gouvitsa*, 735 S.W.2d 452, 457 (Tenn. Ct. App. 1987)). In other words, a juvenile court—and only a juvenile court—must decide a dependency and neglect matter before any other court may do so.

Once a juvenile court has adjudicated a dependency and neglect matter, Tenn. Code Ann. § 37-1-159(a) provides that a circuit court obtains jurisdiction over the dependency

and neglect proceeding upon a party's timely appeal from the juvenile court's final judgment. A dependency and neglect appeal from the juvenile court to the circuit court differs from this Court's review of a trial court's decision because the statute directs the circuit court to "hear the testimony of witnesses and try the case de novo." Tenn. Code Ann. § 37-1-159(a). The de novo requirement is an important distinction because, although the record of the proceedings in the juvenile court must be provided to the circuit court on appeal, the circuit court's decision is not limited to that record. *Green v. Green*, No. M2007-01263-COA-R3-CV, 2009 WL 348289, at *8 (Tenn. Ct. App. Feb. 11, 2009).

Indeed, "the circuit court in a dependency and neglect proceeding may not rely solely on the record made before the juvenile court, but . . . must try the case de novo by hearing witnesses again and by rendering an independent decision based on the evidence in the circuit court proceeding." *Green*, 2009 WL 348289, at *8 (citing *Tenn. Dep't of Children's Servs. v. T.M.B.K.*, 197 S.W.3d 282, 289 (Tenn. Ct. App. 2006); *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004); *In re M.E.*, No. M2003-00859-COA-R3-PT, 2004 WL 1838179, at *5 (Tenn. Ct. App. Aug. 16, 2004)). The requirement of a de novo trial means that the circuit court is to conduct "'[a] new trial . . . on both questions of fact and issues of law . . . as if there had been no trial in the first instance.'" *Id.* (quoting *Kissick v. Kallaher*, No. W2004-02983-COA-R3-CV, 2006 WL 1350999, at *3 (Tenn. Ct. App. May 18, 2006)). This Court has previously held that, because "the purpose of a dependency and neglect proceeding is to protect the welfare of the child, a court should hear evidence of the present situation" to determine both whether dependency and neglect circumstances presently exist and what is in "the child's best interest at the time of the decision." *Id.* at *10 n.13; *see also In re Caleb L.C.*, 362 S.W.3d 581, 599 (Tenn. Ct. App. 2011).

The Department's amended dependency and neglect petition contains the same claims alleged in the original petition—that the child is dependent and neglected and is the victim of severe child abuse perpetrated by the parents—stemming from the same extensive, unexplained injuries that were discovered in January 2015. The new factual allegations added by the amended petition relate to the developments in the termination proceeding as well as the present circumstances of the child and the parents, e.g., that since the conclusion of the termination proceeding, "the full extent of the damage to [the child] from his prior abusive injuries have continued to manifest," that the child does not know the parents and has bonded with his foster family, that both parents have repeatedly denied that the child suffered any abuse and have never "offered any plausible explanation" for the child's injuries, that the parents have been "resistant to recommended medical care and other services" for the child, and that the parents "are no longer residing together as a couple."

Nevertheless, Mother and Father contend that the juvenile court must consider the amended petition before the circuit court may do so. Each parent cites to caselaw to support this argument. Father cites to *In re Justin A.H.*, No. M2013-00292-COA-R3-CV, 2014 WL 3058439 (Tenn. Ct. App. June 7, 2014), and *In re Hailey S.*, No. M2016-00387-COA-R3-

JV, 2016 WL 7048840 (Tenn. Ct. App. Dec. 5, 2016). A review of these cases shows that neither provides authority for Father's argument. The court in *In re Justin A.H.* designated its opinion a "Memorandum Opinion" which, pursuant to Tenn. Ct. App. R. 10, "shall not be published, and shall not be cited or relied on for any reason in any unrelated case." As for *In re Hailey S.*, the Tennessee Supreme Court designated that opinion as "Not for Citation," meaning it has "no precedential value" and "shall not be . . . cited by any judge in any trial or appellate court division, or by any litigant in any brief," except under specific circumstances not applicable in this case. TENN. SUP. CT. R. 4(E)(1)-(2).

Mother cites to *State v. McCaig*, No. W2015-01842-CCA-R3-CD, 2016 WL 7732244 (Tenn. Crim. App. Dec. 19, 2016), for her contention that "a [c]ircuit [c]ourt sitting as an appellate court cannot alter or amend the instrument that brought the case into its jurisdiction because it[s] review is de novo." There, a municipal court partially revoked a defendant's probation on a warrant that alleged two revocation grounds: (1) failure to pay court costs and fines and (2) failure to keep appointments with his probation officer. *Id.* at *1-2. The defendant appealed the municipal court's decision to the circuit court for a de novo hearing. *Id.* at *1. After conducting the de novo hearing, the circuit court revoked the defendant's probation based on a theft offense that was unrelated to the revocation grounds alleged in the probation violation warrant. *Id.* at *3.

The defendant then appealed to the Court of Criminal Appeals, arguing that the circuit court denied him due process by relying on a revocation ground not alleged in the probation revocation warrant. *Id.* at *4. The Court of Criminal Appeals reversed, holding that, "where the Circuit Court had jurisdiction in the probation violation matter solely because of an appeal from the [municipal court], the trial judge was strictly limited to the alleged probation violation grounds which were alleged in the [municipal court]." *Id.* Thus, the court concluded that the circuit court could consider only the probation violation grounds alleged in the petition filed in the lower court. *Id.*

The present case is distinguishable from *McCaig*. Notably, DCS's amended petition does not allege new grounds for dependency and neglect that are unrelated to those alleged in the original petition—that Markus is dependent and neglected based on his extensive injuries that were discovered in January 2015. Rather, the new facts alleged in the amended petition relate to the current circumstances of the child and the parents. This is evidence the circuit court should hear so that it can determine whether circumstances establishing dependency and neglect exist at the time of the de novo hearing and, if appropriate, what custody situation is in "the child's best interest at the time of the decision." *Green*, 2009 WL 348289, at *10 n.13.

For the foregoing reasons, we conclude that the circuit court correctly determined that it has jurisdiction to consider DCS's amended petition.

II. Whether *In re Markus I* has a preclusive effect on both claims in this case

After concluding that it had jurisdiction to consider DCS's amended petition, the circuit court found that the decision in *In re Markus I* had no preclusive effect on either claim in the dependency and neglect case. Mother and Father challenge this finding, arguing that the decision in *In re Markus I* precluded both claims in the dependency and neglect case. Therefore, the second issue certified for our review asks whether the doctrines of judicial estoppel, res judicata, and collateral estoppel apply in this case. We will address each in turn.

A. Judicial estoppel

Generally, "'[u]nder the doctrine of judicial estoppel "a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts[.]"'" *Kershaw*, 583 S.W.3d at 548 (quoting *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999) (quoting *Obion Cnty. v. McKinnis*, 364 S.W.2d 356, 357 (Tenn. 1962))). Tennessee courts apply judicial estoppel to a limited set of circumstances—those "in which 'a party has attempted to contradict by oath a sworn statement previously made.'" *Id.* (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 315 (Tenn. 2009)). In other words, judicial estoppel is used to "'uphold[] the sanctity of an oath.'" *Id.* 548-49 (quoting *Sartain v. Dixie Coal & Iron Co.*, 266 S.W. 313, 317 (Tenn. 1924)). For the doctrine to apply, the sworn statements being compared "'must be totally inconsistent—that is, the truth of one . . . must necessarily preclude the truth of the other.'" *Id.* (quoting 28 AM. JUR. 2D *Estoppel and Waiver* § 68) (footnote omitted).

In the present case, DCS argues, and Father concedes, that judicial estoppel does not apply because there are no sworn statements that were later contradicted. Mother, on the other hand, contends that the doctrine does apply. Though not a model of clarity, Mother's argument here seems to be that judicial estoppel applies because the amended petition contradicts the testimony of DCS's original expert witness, Dr. Brown, that she could not opine that the child's subdural hematomas established that the parents perpetrated severe child abuse because she "could not testify that Markus's hematomas were caused by abuse." *In re Markus I*, 671 S.W.3d at 469. From this argument, we discern that Mother believes DCS's allegations in the amended petition-- that a neuro-ophthalmologist and a pediatric neuropsychologist recently diagnosed the child with "cortical vision impairment" and a brain injury "associated with prior abusive head trauma"-- mean that DCS is now offering contradictory statements from new experts to show that the subdural hematomas establish that the parents committed severe child abuse.

Mother misconstrues the Department's position. As discussed in detail below, DCS has abandoned the severe child abuse claim against the parents based upon the doctrine of

res judicata. Instead, as expressly stated in the amended petition, the evidence relating to the child's recent diagnoses is submitted "to evidence further manifestations of the . . . full extent of the damage" to the child since the conclusion of the termination proceeding. In other words, the new evidence is offered to show the child's current circumstances—evidence the circuit court must consider to determine whether the child is dependent and neglected and what custody arrangement is in the child's best interest at the time of the de novo hearing. *See Green*, 2009 WL 348289, at *10 n.13. We conclude that judicial estoppel does not apply because no sworn, contradictory statements made by DCS exist and DCS is not occupying inconsistent positions vis-à-vis the initial dependency and neglect case or the termination proceeding.

### B. Res judicata and collateral estoppel

We next consider whether the severe child abuse and dependency and neglect claims are precluded by res judicata or collateral estoppel. These two doctrines are very similar. The doctrine of res judicata is often referred to as claim preclusion, and it "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009). Courts apply res judicata when "'an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions[,] and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.'" *In re Shyronne D.H.*, No. W2011-00328-COA-R3-PT, 2011 WL 2651097, at *4 (Tenn. Ct. App. July 7, 2011) (quoting *Galbreath v. Harris*, 811 S.W.2d 88, 90 (Tenn. Ct. App. 1990)). Collateral estoppel, often referred to as issue preclusion, "has been described as an extension of the doctrine of res judicata." *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009). "'[I]t bars the same parties or their privies from relitigating in a second suit issues that were actually raised and determined in an earlier suit.'" *Patton v. Est. of Upchurch*, 242 S.W.3d 781, 787 (Tenn. Ct. App. 2007) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998)). Collateral estoppel and res judicata have the same goals: "to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits." *Creech*, 281 S.W.3d at 376; *Thompson*, 285 S.W.3d at 848.

#### 1. Severe child abuse claim

Considering first the severe child abuse claim, we note that this Court has repeatedly applied the doctrine of res judicata rather than collateral estoppel to preclude relitigation of severe child abuse in a termination case "when such a finding had been made in a previous dependency and neglect action." *In re Heaven L.F.*, 311 S.W.3d 435, 439 (Tenn. Ct. App. 2010); *see also In re Sawyer B.*, No. E2023-01497-COA-R3-PT, 2025 WL 1276693, at *7 (Tenn. Ct. App. May 2, 2025); *In re Cayson C.*, No. E2022-00448-COA-R3-PT, 2022 WL 17246337, at *15 (Tenn. Ct. App. Nov. 28, 2022); *In re Deishun M.*, No.

- 10 -

E2019-00777-COA-R3-PT, 2019 WL 6119307, at *7 (Tenn. Ct. App. Nov. 18, 2019); *In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012). We are unaware of any caselaw applying res judicata in the reverse situation—to preclude relitigation in a dependency and neglect action when a severe child abuse finding was made in a previous termination case—but we have found no authority suggesting that such application is prohibited.[3] Therefore, we will apply the res judicata analysis routinely applied by this Court in termination cases where a claim of severe child abuse has been previously litigated in a dependency and neglect case.

The party seeking to invoke the doctrine of res judicata must prove:

(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

*Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012). In this case, elements (1), (2), and (4) are clearly met: the judgment in the termination of parental rights case was rendered by a court of competent jurisdiction (the Tennessee Supreme Court), the parties in the termination proceeding are the same as those in this dependency and neglect proceeding, and the judgment in the termination case was final and on the merits.

Both parents argue, and DCS concedes, that the third element—whether "the same claim or cause of action was asserted in both suits"—is also satisfied. We must agree. Relying on Markus's extensive injuries that were discovered in January 2015, DCS asserted in both the original and amended petitions for dependency and neglect that Mother and Father perpetrated severe child abuse as defined in Tenn. Code Ann. § 37-1-102(b)(27). The Department asserted the same claim against both parents in *In re Markus I*. Specifically, in *In re Markus I*, DCS asserted that the parents' parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(4) because, based on the same injuries discovered in January 2015, the parents perpetrated severe child abuse on Markus. That termination ground relies on the same definition of severe child abuse that DCS relied on in the original and amended petitions for dependency and neglect to claim that the parents severely abused Markus. *See* Tenn. Code Ann. § 36-1-113(g)(4) (stating that a parent's parental rights may be terminated if the parent "has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child").

---

[3] This appears to be the specific question posed by the third issue certified for review. We interpret the third issue as being related to the second issue, so we address them together.

Furthermore, the Tennessee Supreme Court squarely addressed the severe child abuse claim against both parents in *In re Markus I*, concluding that DCS failed to prove by clear and convincing evidence that either parent committed severe child abuse against Markus by knowingly failing to protect him from abuse. *In re Markus I*, 437 S.W.3d at 472. A review of the two dependency and neglect petitions shows that DCS did not assert any new facts in the amended petition relating to whether the parents committed severe child abuse against Markus in 2015, or at any time thereafter. Rather, the new facts alleged in the amended petition relate to the parents' and the child's current circumstances that have changed since the juvenile court adjudicated the child dependent and neglected in 2015, particularly that the parents no longer live together and that Markus has been diagnosed with various medical conditions.

Based on the foregoing, we conclude that relitigation of the severe child abuse claim is barred by res judicata and, therefore, we reverse the circuit court's decision on that claim.[4]

---

[4] Although this Court typically applies the doctrine of res judicata to determine whether a severe child abuse claim is precluded, one panel of this Court stated that "the issue is, in fact, one of collateral estoppel." *In re Shyronne D.H.*, 2011 WL 2651097, at *5 n.14. The *In re Shyronne D.H.* court suggested that prior reference to the matter being res judicata stemmed from the more general definition of res judicata—"'a matter adjudged; a thing judicially acted upon or decided.'" *Id.* (quoting *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 n.11 (Tenn. 1995) (quoting BLACK'S LAW DICTIONARY 1174 (5th ed. 1979))). Even if collateral estoppel applied, the severe child abuse claim would still be precluded in this case.

The party asserting collateral estoppel bears the burden of proving:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privy with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009). The first two elements have been established. The issue to be precluded—whether Markus's injuries that were discovered in January 2015 establish that the parents committed severe child abuse—is the same issue that was raised and litigated in *In re Markus I*. As already discussed in this opinion, the termination ground at issue in *In re Markus I* relied on the same definition of severe child abuse that is at issue in the dependency and neglect case. After the parties extensively litigated that issue in *In re Markus I*, the Supreme Court concluded that the parents' parental rights could not be terminated because the evidence did not establish that the child's injuries constituted severe child abuse perpetrated by the parents. *In re Markus I*, 671 S.W.3d at 467, 472. The third element has also been established because there is no dispute that the Supreme Court's judgment has become final. As for the fourth and fifth elements, the parties in the dependency and neglect case are the same as those in the termination proceeding, and DCS acknowledges that it had a full and fair opportunity in the termination proceeding to prove that the child's injuries constituted severe child abuse perpetrated by the parents.

## 2. Dependency and neglect claim

We must next determine whether the dependency and neglect claim is precluded by the Supreme Court's decision in *In re Markus I.* The Department and the guardian ad litem contend that the circuit court did not err in concluding that *In re Markus I* had no preclusive effect on the dependency and neglect claim. For the reasons discussed below, we agree.

Under Tennessee law, termination proceedings are separate and distinct from dependency and neglect proceedings. *See In re M.J.B.*, 140 S.W.3d at 651 (stating that "[a] termination of parental rights proceeding is not simply a continuation of a dependent-neglect proceeding"). The Supreme Court acknowledged the differences between the two proceedings in *In re Markus I*:

> There is some overlap between the two, particularly insofar as "severe child abuse" can be pertinent in dependency and neglect cases as well as termination of parental rights cases. Still, dependency and neglect proceedings are "separate proceeding[s] involving different goals and remedies. . . ." *In re M.J.B.*, 140 S.W.3d at 651. "The primary purpose of a dependent-neglect proceeding is to provide for the care and protection of children whose parents are unable to or unwilling to care for them. The sole purpose of the termination proceeding . . . is to sever irrevocably the legal relationship between biological parents and their children." *Id.*

*In re Markus I*, 671 S.W.3d at 474-75.

After acknowledging the foregoing distinctions, the Supreme Court clarified that its decision did not preclude a finding of dependency and neglect in the proceedings pending in the circuit court by emphasizing the distinction between severe child abuse under Tenn. Code Ann. § 37-1-102(b)(27)(A), which included a "knowing" mens rea, and abuse under Tenn. Code Ann. § 37-1-102(b)(13)(G), which includes no such mens rea.[5] *Id.* In particular, Tenn. Code Ann. § 37-1-102(b)(13)(G) provides that "dependent and neglected child" means a child "who is suffering from abuse or neglect." The statute further defines abuse as existing

---

[5] Both parents argue that the Supreme Court's discussion of the dependency and neglect issue constitutes dicta and is, therefore, irrelevant here. Even if this discussion constitutes dicta, it is relevant in this case because "it is a strong indication of the supreme court's view." *Franklin v. City of Memphis, Tenn.*, No. W2023-01142-COA-R3-CV, 2025 WL 1392464, at \*4 (Tenn. Ct. App. May 14, 2025). Furthermore, the Court's discussion of the dependency and neglect issue provided specific guidance for the lower courts on how to proceed with this case. As the Supreme Court has previously held, the lower courts "are not free to disregard, on the basis that the statement is obiter dictum, the pronouncement of a superior court when it speaks directly on the matter before it, particularly when the superior court seeks to give guidance to the bench and bar." *Holder v. Tenn. Jud. Selection Comm'n*, 937 S.W.2d 877, 882 (Tenn. 1996). The parents' argument is unavailing.

when a person under the age of eighteen (18) is suffering from, has sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability or physical or mental condition caused by brutality, neglect or other actions or inactions of a parent, relative, guardian or caretaker.

Tenn. Code Ann. § 37-1-102(b)(1).

Father attempts to contradict the Supreme Court's express acknowledgment that the claims are different by asserting that a "knowing" mens rea does, in fact, exist in the definition of "abuse." According to Father, the Supreme Court's finding that the evidence was insufficient to prove that the parents committed severe child abuse by "knowingly" failing to protect him from abuse precludes any finding that the parents "caused" Markus to suffer from abuse. His argument here focuses on the legislature's use of the term "caused" in Tenn. Code Ann. § 37-1-102(b)(1). Because the statute does not define "caused," Father argues that "'caused' is best interpreted as 'knowing' as defined by the Tennessee Supreme Court in [*In re Markus I*]."

We are not persuaded by this argument. First, the courts of this state have repeatedly held that a parent's state of mind is irrelevant for a finding of dependency and neglect because "[t]he definitions of 'abuse' and 'dependent and neglected child' focus on the child's circumstances, not the state of mind of the caregiver."[6] *In re S.J.*, 387 S.W.3d 576, 589 (Tenn. Ct. App. 2012); *In re Tamera W.*, 515 S.W.3d 860, 872 (Tenn. Ct. App. 2016) (stating that "a finding of dependency and neglect is not particular to one parent or the other but simply questions the status of the children"). As the Supreme Court has explained, "[t]his is because parents have a duty to provide, and children have a corresponding right

---

[6] The guardian ad litem relies on this distinction to argue that *In re Markus I* had no preclusive effect on the severe child abuse claim. In particular, he asserts that, if the circuit court finds that the child "suffer[ed] from abuse or neglect" pursuant to Tenn. Code Ann. § 37-1-102(b)(13)(G), Tenn. Code Ann. § 37-1-129(b)(2) (2023) required that the court then determine "whether the parents or either of them or another person who had custody of the child committed severe child abuse." In other words, the guardian ad litem argues, the circuit court "is not forced to identify which parent committed the abuse. Instead, [the court] must determine whether the child's status is that of a severely abused child." We respectfully reject this argument. Notably, nothing in the language of Tenn. Code Ann. § 37-1-129(b)(2) (2023) indicated that its use of the term "severe child abuse" meant anything other than the definition provided in Tenn. Code Ann. § 37-1-102(b)(27)(A). *See* Tenn. Code Ann. § 37-1-102(b) (2023) (providing that the definitions "used in this part" applied "unless the context otherwise require[d]"). The Supreme Court interpreted that definition in *In re Markus I* and concluded that DCS failed to present clear and convincing evidence establishing that either parent committed severe child abuse. Thus, the issue of whether the parents committed severe child abuse is precluded. If, on remand, the circuit court determines that the child is dependent and neglected because he suffered abuse, the court may still satisfy the requirements of Tenn. Code Ann. § 37-1-129(b)(2) by incorporating the Supreme Court's finding in *In re Markus I* or, if established by the evidence, by finding that "another person who had custody of the child committed severe child abuse." *In re Markus I*, however, precludes the circuit court from making a fresh determination that "the parents or either of them" committed severe child abuse because that issue has already been fully litigated.

to be provided, a safe environment free from abuse or neglect." *In re Markus I*, 671 S.W.3d at 475. Second, the rules of statutory construction require us to presume that, in using "caused" to define "abuse" while using "knowing" to define "severe child abuse," the legislature purposely chose to use different terms to define different concepts. *See State v. Marise*, 197 S.W.3d 762, 766 (Tenn. 2006) ("When construing a statute, courts are to give effect to the ordinary meaning of the words used in the statute and presume that each word used was purposely chosen by the legislature to convey a specific meaning."). Lastly, because the definition of "abuse" includes injuries "caused by brutality, neglect or other actions or inactions of a parent, relative, guardian or caretaker," it includes conduct that may not have been "knowing." Tenn. Code Ann. § 37-1-102(b)(1); *cf. In re Markus I*, 671 S.W.3d at 444 (holding that "conduct is considered 'knowing,' and a person is deemed to 'knowingly' act or fail to act, when he actually knows of relevant facts, circumstances or information, or when he is either in deliberate ignorance of or in reckless disregard of such facts, circumstances, or information presented to him").

In sum, based on our review of the Supreme Court's opinion in *In re Markus I* and the relevant statutes, we conclude that the severe child abuse claim and the dependency and neglect claim are different claims. The relevant portions of the Supreme Court's decision in *In re Markus I* concerned only whether the parents perpetrated severe child abuse against Markus. The Court made no findings or conclusions regarding whether he is a dependent and neglected child. We, therefore, affirm the circuit court's determination that *In re Markus I* had no preclusive effect on the dependency and neglect claim.[7]

## CONCLUSION

The circuit court's decision that *In re Markus I* has no preclusive effect on the severe child abuse claim is reversed, and the court's decision is affirmed in all other respects. The case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellants, Mark E., Sr., and Nakesha M., for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

[7] We note that both parents raise constitutional issues in their appellate briefs. Father's argument focuses on the language in Tenn. Code Ann. § 37-1-102(b)(1) allowing a court to find a child dependent and neglected due to abuse by a relative or caregiver. He contends that removing custody from the parents based on a finding that Markus is dependent and neglected due to a non-parent's abuse is unconstitutional because "involuntary removal from a parent's custody" requires "a finding that the parent is unfit." Mother argues that it is unconstitutional for parents to lose their rights to the care and custody of their children without a "knowing" requirement. This case is before us as an interlocutory appeal filed pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Under that rule, our review is "'limited to those questions clearly within the scope of the issues certified for interlocutory appeal.'" *Binns v. Trader Joe's East, Inc.*, 690 S.W.3d 241, 246 (Tenn. 2024) (quoting *Metro. Gov't of Nashville & Davidson Cnty. v. Tenn. Dep't of Educ.*, 645 S.W.3d 141, 147 (Tenn. 2022)). The constitutional issues raised by the parents are not among the issues certified for our review. We, therefore, decline to address those issues.